# In re C-Y-Z-, Applicant[1]

*Decided June 4, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien whose spouse was forced to undergo an abortion or sterilization procedure can establish past persecution on account of political opinion and qualifies as a refugee within the definition of section 101(a)(42) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42) (1994), *as amended by* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 601(a), 110 Stat. 3009-546, 3009-689.

(2) The regulatory presumption of a well-founded fear of future persecution may not be rebutted in the absence of changed country conditions, regardless of the fact that the sterilization of the alien's spouse negates the likelihood of future sterilization to the alien.

FOR THE APPLICANT: Yee Ling Poon, Esquire

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Charles Parker, Jr., Assistant District Counsel

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; HEILMAN, HOLMES, HURWITZ, COLE, MATHON, and GUENDELSBERGER, Board Members. Concurring Opinion: ROSENBERG. Concurring and Dissenting Opinion: FILPPU, Board Member. Dissenting Opinions: VACCA, Board Member; VILLAGELIU, Board Member.

HEILMAN, Board Member:

The applicant, a native and citizen of the People's Republic of China, has timely appealed from the Immigration Judge's denial of asylum and withholding of deportation. The appeal will be sustained.

## I. FACTS

The applicant is a native and citizen of the People's Republic of China who arrived in this country on April 23, 1993. He was married in China on October 25, 1986,[2] and is the father of three children, two daughters born on July 31, 1988, and March 18, 1990, and a son born on April 14, 1991. The

---

[1] We note that the Board's decision in this case is pending before the Attorney General upon certification at the time of publication.

[2] He testified, however, that he did not register his marriage until 1991.

applicant claimed in his asylum application that he was persecuted in China on account of his opposition to China's birth control policies. He claimed in a supplemental affidavit to his asylum application that, after the birth of his first child, his wife was forced to obtain an intrauterine device ("IUD") in September 1988, and that when he protested, he was arrested and detained for 1 day. The IUD was later removed, and his wife became pregnant a second time. The applicant stated that his wife was ordered to undergo an abortion in January 1990, but avoided doing so by hiding with relatives. The applicant and his wife returned home for the child's birth. On May 8, 1990, they were fined 2,000 yuan. The applicant stated that he paid the fine to avoid having his house destroyed by birth control cadres.

The applicant then testified that his wife became pregnant a third time because they wanted a son, and that he and his wife once again hid to avoid detection. They also returned home in time for his wife to give birth. After the birth of the third child, the applicant's wife was forced to be sterilized against her will on May 25, 1991. The applicant left China approximately 18 months after his wife's sterilization. In support of his application, the applicant submitted unauthenticated copies of the following documents: a certificate that his wife was sterilized, a document showing that he was fined, a marriage certificate, birth certificates for his children, and a copy of his household registry.

## II.  IMMIGRATION JUDGE'S DECISION

The Immigration Judge did not make an adverse credibility finding in this case. He stated that "[p]utting aside any questions I might have as to whether the applicant has been completely truthful about the actual facts in the case, whether he has told the truth, whether he has lied, whether he has embellished or puffed the story to make it seem more than it is," it appeared only that the Chinese Government "put some roadblocks in this applicant and his wife's way in having their family," but that ultimately, they were able to do so with only a minimal fine. Although the Immigration Judge mentioned the fact of the forced sterilization procedure, he noted only that the applicant had no other problems in China, and that "[c]ertainly his wife, if indeed she was forced to undergo an involuntary sterilization, did not gain anything from having the applicant abandon her and the children for the United States." The Immigration Judge concluded that nothing specific had happened to this applicant other than a threat of arrest and a brief 1-day detention, and that, "[i]n effect, the applicant seeks to ride on his wife's coattails or claim asylum because of alleged adverse factors to his wife, including forced sterilization. He, himself, has never been persecuted and he cannot show either past persecution or a reasonable fear of future persecution."

We note that the Immigration Judge's decision that the applicant had not been a victim of past persecution or a member of a group protected under the

Immigration and Nationality Act was consistent with the Board's decision in *Matter of Chang*, 20 I&N Dec. 38 (BIA 1989). However, subsequent to the Immigration Judge's decision, the law was amended to specifically address coercive family planning practices in the context of applications for asylum, and *Matter of Chang, supra*, has been superseded by our recent decision in *Matter of X-P-T-*, 21 I&N Dec. 634 (BIA 1996), which is discussed below.

## III. SECTION 601(a) OF THE IIRIRA

During the pendency of this appeal, section 601(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-689 ("IIRIRA"), was enacted on September 30, 1996. Section 601(a) amended the refugee definition of section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42) (1994), by adding the following sentence:

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

This Board subsequently determined in *Matter of X-P-T-, supra,* that an alien who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for resistance to a coercive population control program, has suffered past persecution on account of political opinion and qualifies as a refugee within the amended definition of that term under section 101(a)(42) of the Act.

## IV. ISSUE

The threshold issue on appeal is whether the applicant in this case can establish past political persecution based upon his wife's sterilization. If so, we then must determine whether, without more, the applicant has established statutory eligibility for asylum in the absence of changed country conditions.

## V. SERVICE'S POSITION

The position of the Immigration and Naturalization Service is that past persecution of one spouse can be established by coerced abortion or sterilization of the other spouse. The Service specifically stated in a memorandum of October 21, 1996, entitled "Asylum Based on Coercive Family Planning Policies—Section 601 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996," that "an applicant whose spouse was forced to undergo an abortion or involuntary sterilization has suffered past persecution, and may thereby be eligible for asylum under the terms of the new

refugee definition." Memorandum from the Office of the General Counsel of the Immigration and Naturalization Service 4 (Oct. 21, 1996) [hereinafter Memorandum]. The Service also conceded this fact in its brief on appeal in this case, stating, "The Service is aware that its legal perspective as directed by the General Counsel is that the husband of a sterilized wife can essentially stand in her shoes and make a *bona fide* and non-frivolous application for asylum based on problems impacting more intimately on her than on him." The Service asserted, however, that an alien who has established past persecution may or may not be able to establish a well-founded fear of future persecution. In its brief the Service relied on the memorandum, which stated: "If the applicant does not have a well-founded fear of future persecution, he would only merit a favorable exercise of discretion . . . if the abortion or involuntary sterilization is determined to be an 'atrocious form' of persecution *to the applicant*." Memorandum, *supra*, at 4. The Service then argued that this case is distinguishable from *Matter of X-P-T-, supra*, because the documents submitted were not authenticated, and that there were other factors which impacted on the applicant's credibility, noting, "[F]or example, the IJ was not convinced of the necessity of fleeing China because the harm, if any, that had occurred has ceased and did not impact directly against the person of the applicant." In addition, the Service also stated that there was no evidence in the record which alleged "that sterilization was accomplished under any governmental orders entered against the wishes of the applicant or his wife."

## VI.  APPLICANT'S POSITION

The applicant stated on appeal that he is entitled to asylum on the basis of our decision in *Matter of X-P-T-, supra*, and on the basis of the October 21, 1996, memorandum from the Immigration and Naturalization Service's Office of General Counsel. Memorandum, *supra*. The applicant asserted, however, that the "atrocious form of persecution" standard outlined in the General Counsel's memorandum is inapplicable to an alien who has met the regulatory presumption of a well-founded fear of future persecution based on past persecution and unchanged country conditions. He further asserted that, because country conditions in China have not changed, but have actually worsened, the presumption that the applicant also has a well-founded fear of persecution has not been rebutted.

## VII.  ASYLUM AND WITHHOLDING OF DEPORTATION

We find that the applicant in this case has established eligibility for asylum by virtue of his wife's forced sterilization. This position is not in dispute, for the Service conceded in its appeal brief that the spouse of a woman who has been forced to undergo an abortion or sterilization procedure can thereby establish past persecution. *Cf. Matter of Kasinga*, 21 I&N 357 (BIA 1996).

Inasmuch as the applicant has adequately established that he suffered past persecution, there is a regulatory presumption that he has a well-founded fear of future persecution under 8 C.F.R. § 208.13(b)(1)(1997).[3] *See Matter of X-P-T-, supra*, at 635; *Matter of H-*, 21 I&N Dec. 337 (BIA 1996). We reject the Service's assertion that an alien who has established past persecution has an additional burden of establishing a well-founded fear of future persecution by demonstrating that the involuntary sterilization was carried out in such a way as to amount to an "atrocious form" of persecution. There is no additional burden of this nature, either by regulation or by statute. The applicant need not demonstrate compelling reasons for being unwilling to return resulting from the severity of the past persecution unless the presumption under 8 C.F.R. § 208.13(b)(1)(i) has been rebutted by the Service. *See* 8 C.F.R. § 208.13(b)(1)(ii); *see also Matter of H-, supra*, at 346. The regulatory presumption may be rebutted only by a showing, by a preponderance of the evidence, that since the time the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of persecution if returned to his home country. *Matter of H-, supra*. In this case, the Service has not alleged or presented evidence of changed country conditions, either at the hearing below or on appeal. In view of the controlling regulations, we find that this applicant has established eligibility for asylum on account of political opinion.

In regard to the applicant's application for withholding of exclusion and deportation, we find that, because he has established past persecution, he is entitled under 8 C.F.R. § 208.16(b)(2) (1997) to a regulatory presumption of a continuing threat in China to his life or freedom. *See Matter of X-P-T-, supra*. As this presumption has not been rebutted, we will grant the application for withholding of deportation to China.

## VIII. CONCLUSION

This applicant's spouse was forcibly sterilized in China. In view of the enactment of section 601(a) of the IIRIRA and the agreement of the parties that forced sterilization of one spouse on account of a ground protected under the Act is an act of persecution against the other spouse, the applicant has established past persecution. Further, because of the regulatory presumption of a well-founded fear of future persecution that arises from a finding of past persecution and the absence of changed country conditions, we find that the

---

[3] Section 208.13(b)(1)(i), provides in relevant part:

> If it is determined that the applicant has established past persecution, he shall be presumed also to have a well-founded fear of persecution unless a preponderance of the evidence establishes that since the time the persecution occurred conditions in the applicant's country of nationality or last habitual residence have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return.

applicant has demonstrated statutory eligibility for asylum and withholding of deportation, which will be granted.

**ORDER:** The applicant's request for asylum is granted, conditioned upon an administrative determination by the Service that a number is available for such a grant under section 207(a)(5) of the Act (to be codified at 8 U.S.C. § 1157(a)(5)).

**FURTHER ORDER:** The applicant's request for withholding of deportation to China is granted.

*CONCURRING OPINION:* Lory D. Rosenberg, Board Member

I respectfully concur.

I agree with the decision of the majority in its entirety. The applicant qualifies as a refugee as defined by the statute at section 101(a)(42) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42) (1994), *as amended by* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 601(a), 110 Stat. 3009-546, 3009-689 ("IIRIRA"). He is, therefore, entitled to withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h) (1994), and he is eligible for and has been granted asylum, appropriately, as a matter of discretion, under section 208 of the Act, 8 U.S.C. § 1158 (1994).

My agreement is based not only on the specific language of the statute as amended and the positions of the parties. It also is based on the relevant precedent decisions of this Board, the Federal courts, and the Supreme Court, which have construed the elements contained in the refugee definition and interpreted the proper exercise of discretion in asylum cases. I write separately to emphasize that the presence of a specific clause in the statutory definition of "refugee" pertaining to coercive population control policies does not obviate the applicability of existing standards and principles which make up established refugee doctrine. Its terms are consistent with those standards and principles, which, in and of themselves, support the result we reach in this appeal.

## I. SATISFACTION OF THE REFUGEE DEFINITION

There are two fundamental questions, not squarely addressed by the majority, which arise under our decision. One is the nature of the amendment made to section 101(a)(42) of the Act. The other is the characterization of the views of those who oppose the government policy in question, the harm inflicted, and the reasons for the harm being inflicted.

### A. Nature of the Amendment Made by Section 601 of the IIRIRA

In my view, we are not granting asylum in this case merely because we are compelled to by a statutory amendment which deviates from established

asylum doctrine.[1] We are granting asylum because, in a well-documented and credible case, plausible in light of country conditions, the applicant has articulated his and his wife's opposition to a compulsory government policy that fails to respect fundamental human rights, and the punishment they individually and jointly suffered because of that opposition.

The applicant has established past persecution and a well-founded fear of persecution as articulated in the statute and interpreted by agency and judicial precedent. *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987) (holding that according to the decision of the Supreme Court in *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987), a well-founded fear of persecution is established where there exists a reasonable possibility of persecution); *see also Matter of Fefe*, 20 I&N Dec. 116, 118 (BIA 1989) (holding that the asylum hearing requires presentation of oral testimony which may expand on the statements made in an application, and in some cases, may establish eligibility for asylum when such eligibility would not have been established by the documents alone).

The amended refugee definition merely specifies that certain persons who have suffered invasive procedures under a coercive population control program, or who have been persecuted for failure to undergo such procedures or for other resistance to such procedures, and those who have a well-founded fear they will be forced to undergo such procedures or be subject to persecution for their resistance to the program qualify under the definition. The scope of the definition at section 101(a)(42)(A) of the Act has not been altered; rather, the amendment simply clarifies that being forced to undergo such procedures or being otherwise harmed or punished for resisting the program is harm or abuse on account of political opinion.

As I stated in my concurrence in *Matter of Kasinga*, 21 I&N Dec. 357 (BIA 1996), there are essentially three elements critical to meeting the refugee definition. These are a subjective fear of harm supported by objective conditions; a form of harm or punishment rising to the level of persecution; and an explanation for such mistreatment demonstrating that it is motivated, at least in part, by the persecutor's interest in quashing what it considers being an offensive belief or characteristic.

## B. Actual or Imputed Political Opinion

The right to privacy, the right to have a family, the right to bodily integrity, and the right to unfettered reproductive choice are fundamental individual rights, recognized domestically and internationally.[2] The view that these are

---

[1] IIRIRA § 601(a).

[2] Recognition of the fundamental nature of the right to procreate is found not only in United States constitutional law, but also in the international human rights standards reflected in the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102. In 1948, Article 16(1) of the Universal Declaration of Human Rights, G.A. Res. 217A(III), U.N. Doc. A/810, at 71 (1948), the first comprehensive human rights instrument proclaimed by the United Nations, stated that persons

fundamental rights, and that the election to exercise them should be respected and not trampled, constitutes a political opinion. *See INS v. Elias-Zacarias,* 502 U.S. 478 (1992) (holding that the opinion of a victim who contends she or he has been or will be subjected to persecution is critical to determining the motivation for the harm inflicted or feared). However simple or sophisticated an individual's conception or articulation of these rights may be, one who opposes or resists a coercive population control program involving forced abortion and sterilization because he or she believes that it is wrong or improper on personal, ethical, religious or philosophical grounds, holds a political opinion.

Like it or not, *Matter of Chang*, 20 I&N Dec. 38 (BIA 1989), has been overruled by the express statutory language in the amendment, which clarified that actual or feared sterilization, abortion, or other punishment for resistance to a coerced population control program constitutes the type of persecution that qualifies an applicant as a refugee within the meaning of section 101(a)(42)(A) of the Act. *See Matter of X-P-T-*, 21 I&N Dec. 634 (BIA 1996). The rationale for the result reached in that case does not survive any more than does the result which we now acknowledge has been overruled.

It is, at least in part, precisely because the rationale in *Matter of Chang, supra*, was erroneous and contrary to accepted imputed political opinion doctrine, that clarification of some sort, which ultimately took the form of a statutory amendment to the refugee definition, was necessary. In fact, the rationale in *Matter of Chang, supra*, is inapposite to the recognition of imputed political opinion expressly adopted in subsequent Board decisions such as *Matter of Kasinga, supra*, and *Matter of S-P-*, 21 I&N Dec. 486 (BIA 1996). *See also Matter of Mogharrabi, supra* (recognizing imputed political opinion prior to the 1992 Supreme Court decision in *INS v. Elias-Zacarias, supra*). *See generally Ravindran v. INS*, 976 F.2d 754, 760 (1st Cir. 1992); *Canas-Segovia v. INS*, 970 F.2d 599, 601-02 (9th Cir. 1992).

An individual's own refusal or failure to comply with a compulsory population control program, or his or her association with one who expressly resists or opposes such a program, may cause such a political opinion to be imputed to that individual. As discussed below, that individual has a reasonable fear of persecution even if he, himself, was not persecuted at all or as severely as the victim whose views are imputed to him. There is nothing in the doctrine of imputed political opinion, and indeed, it is somewhat

---

"have the right to marry and to found a family." See also Articles 17 and 23(2) of the International Covenant on Civil and Political Rights, G.A. Res. 2200 (XXI), 21 U.N. GAOR, Supp. No. 16, at 52, U.N. Doc. A/6316 (1967), which was ratified by the United States on September 5, 1992 (affirming the right to privacy, family, and home, and the right to marry and found a family); United Nations, Hum. Rt. Comm., General Comments, CCPR/ C/21/ Rev.1/Add.2 (1990) ("[T]he right to found a family implies, in principle, the possibility to procreate and live together. When State parties adopt family planning policies, they . . . should, in particular, *not be . . . compulsory*."). (Emphasis added.)

antithetical to the doctrine, to suggest that it is only available when the perse-cuted victim whose views are imputed to the applicant also is applying for asylum.

## C. Harm and Punishment

The fact that the persecution that is threatened or suffered is the precise conduct or treatment that the victim opposed or resisted does not undermine its characterization as persecution. In some cases, the harm or punishment imposed is distinct from the objectionable practice being opposed (e.g., when a dissident professor lectures and publishes criticisms of a totalitarian gov-ernment's denial of free speech and democracy, in violation of a governmen-tal policy which seeks to end unauthorized lecturing and publishing, and is exiled). Were the persecuting government to cut out the professor's tongue, seize her computer, and break her fingers to prevent her from communicat-ing, however, that would be no less persecutory on account of her dissidence.

In the compulsory population control situation in China, the offensive characteristics are remaining fertile and reproducing contrary to government policy, as well as dissidence in opposition to the policy, including both an individual refusal to conform, and the encouragement of others not to do so. The punishment imposed to overcome the offending characteristic may be forced sterilization or abortion, in addition to other sanctions that may amount to persecution such as threats, beatings, detention, incarceration, destruction of property, loss of employment, and harm to other family members.

Neither sterilization nor abortion, in and of itself, is a violation of funda-mental human rights, nor does either constitute persecution, per se. See *Mat-ter of Kasinga, supra,* at 365-66, including the factor of opposition to female genital mutilation in defining the social group in which the applicant was included, and citing *Fatin v. INS*, 12 F.3d 1233, 1241 (3d Cir. 1993), for its recognition that Iranian women who refuse to conform to the government's gender specific laws and social norms may be able to establish eligibility for asylum. As a consequence of *opposition* to those practices, however, either procedure, imposed involuntarily, may constitute persecution. Being forced to comply with the very violation of fundamental human rights which one opposes on political, religious, or other grounds, constitutes a type of punish-ment for a characteristic which the persecutor, in this case the Chinese Gov-ernment, wishes to quash or overcome. *See Matter of Acosta,* 19 I&N Dec. 211 (BIA 1985), *modified on other grounds, Matter of Mogharrabi.*

We would not conclude that if a dissident opposed her government's prac-tice of torture or protested apartheid, and in response was tortured or banned from even limited intermingling with persons of other rank or race in society, she would have no basis for a future fear of harm because the practice objected to had already been imposed on the dissident, resulting in forced

compliance. Only a failure to understand that opposition or resistance to forced abortion and sterilization is the expression and exercise of a political opinion, or choice, can explain the suggestion made by some that once the victim is sterilized and can no longer have children, the persecutor's allegedly legitimate objective has been achieved, so that there no longer would be a basis for persecution motivated by the victim's opposition.

Furthermore, the fact that the persecutor is successful in overcoming one aspect of the belief or characteristic found to be offensive does not mean there is no longer any possibility of either husband or wife being subject to another form of persecution for the same reason. Detention, interrogation, beatings, loss of employment, destruction of possessions or housing, discrimination, and imposition of other disadvantages, either individually or cumulatively, may amount to persecution. Although not all forms of discrimination, harassment, or mistreatment constitute persecution, such determinations must be made on a case-by-case basis. *Cf. Fatin v. INS, supra.*

An applicant need not demonstrate that harm already experienced rises to the level of persecution, or that it probably will, in the future, rise to the level of persecution, but that there is a reasonable likelihood that it may reach that level. *See Abdel Massieh v. INS*, 73 F.3d 579 (5th Cir. 1996). Thus, even putting aside the regulatory presumption under 8 C.F.R. § 208.13 (1997) of a well-founded fear of persecution, which results, in the applicant's case, from our finding that he established past persecution due to his wife's sterilization, he has demonstrated qualifying harm that could independently support a well-founded fear of persecution. *See also Matter of H-*, 21 I&N Dec. 337 (BIA 1996).

## D. "On Account Of" and the Mixed Motive Standard

A subjective intent to "punish" is not required for harm to constitute persecution. *See Matter of Kasinga, supra*, at 365 (citing *Matter of Kulle,* 19 I&N Dec. 318 (BIA 1985)); *Matter of Acosta, supra*. Furthermore, the fact that punishment or mistreatment is imposed in response to an individual's opposition or challenge to an official government policy does not make it any less a form of persecution. *See Matter of Izatula*, 20 I&N Dec. 149 (BIA 1990) (finding that punishment for activities undertaken to overthrow a government where democratic means of change are not provided constitutes persecution, because it punishes political opinion that has no alternative expression); *Matter of Salim*, 18 I&N Dec. 311 (BIA 1982) (holding that punishment for refusing to serve in the military in Afghanistan, under the circumstances of the conflict there, would constitute persecution on account of political opinion).

For example, enforcement of the arguably legitimate desire of certain countries to maintain the distribution of professional and skilled persons among their citizenry has not been accepted at face value. *See Rodriguez-*

*Roman v. INS*, 98 F.3d 416, 431 (9th Cir. 1996) (holding that the Board erred in concluding that the severe punishment an alien would suffer upon return to Cuba following illegal departure would be merely criminal prosecution, and not on account of political opinion); *see also Sovich v. Esperdy*, 319 F.2d 21, 28-29 (2nd Cir. 1963) (finding that despite the imprimatur of a juridical system, given the recent corrupt and inhumane practices of Hitler's regime, it would be naive to suppose that punishment for illegal departure, under most circumstances, is not politically motivated); *Matter of Janus and Janek*, 12 I&N Dec. 866, 873 (BIA 1968).

Thus, the fact that the challenged treatment may be inflicted in furtherance of an official policy pursued by a legitimate government is not necessarily dispositive. It does not mean that imposition of consequences imposed on persons who resist its enforcement is not also motivated by a persecutory intent to punish. *See Matter of S-P-, supra*. This is another respect in which *Matter of Chang, supra*, was at odds with the law of asylum pertaining to the "on account of" element and required an express clarification in the statute of the international standards upon which it is based.[3]

The proper question is whether the mistreatment suffered or threatened could be imposed, in part, for persecutory reasons. *See INS v. Elias-Zacarias*, *supra* (recognizing that a persecutor may be motivated to harm the victim for more than one reason); *Singh v. Ilchert*, 69 F.3d 375 (9th Cir. 1995); Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* para. 58, at 15-16 (Geneva, 1992) ("*Handbook*"). Recognizing that persecutors rarely provide direct evidence of their persecutory motivation, we look at such factors as threats or abuse that were directed at overcoming or punishing opinion rather than conduct, mistreatment out of proportion to nonpolitical ends, and treatment of others who were confronted by the alleged agent of persecution. *Matter of S-P-, supra*, at 492. The invasive and excessive character of the sanction imposed on the applicant's wife belies any claims that can be made to the effect that such treatment merely constitutes the neutral efforts of a government to encourage or ensure cooperation with a benevolent public policy.

As one commentator has noted, "to the extent that the Chinese policy is, in practice, simply a set of incentives for limiting the size of families, it would

---

[3] According to the Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* paras. 56, 57, at 15 (Geneva, 1992) ("*Handbook*"), evidence that resistance to a law is regarded as a form of political opposition frequently is demonstrated by the imposition of disproportionately severe punishment. In addition, punishment for rebellion against such law amounts to persecution within internationally recognized standards, as "it is possible for a law not to be in conformity with accepted human rights standards." *Id*. para. 59, at 16.

be difficult to characterize its application to the general population as 'persecution' . . . . If the penalties imposed were unacceptably severe, however, persecution could be found. The clearest case would be forced sterilization and abortion . . . and a general policy of imposing such measures ought to be deemed persecution." T.A. Aleinikoff, *The Meaning of "Persecution" in United States Asylum Law*, 3 International Journal of Refugee Law 23 (1991).[4]

## II. IMPUTED POLITICAL OPINION AND FAMILY RELATIONSHIPS

It is not as unusual as one or all of my colleagues writing separately would make it seem that the applicant should be granted asylum although the harm experienced was not by him, but by a family member. *See Matter of Villalta,* 20 I&N Dec. 142 (BIA 1990) (holding that threat of harm to immediate family, which was due, in part, to the applicant's political activities, and the actual murder of his brother supported a finding of a well-founded fear of persecution); *see also Handbook, supra*, para. 43, at 13 (stating that an applicant need not show a threat of persecution based on personal experience, as evidence concerning relatives may support the conclusion that fear is well founded); *Ananeh-Firempong v. INS*, 766 F.2d 621 (1st Cir. 1985) (concluding that evidence of treatment of one's family is probative of a threat to the petitioner); *Ramos-Vasquez v. INS*, 57 F.3d 857 (9th Cir. 1995) (citing *Ariaga-Barrientos v. INS*, 937 F.2d 411, 414 (9th Cir. 1991), finding that notwithstanding an utter lack of persecution against the petitioner himself, violence against friends and family which creates a pattern of persecution closely tied to the petitioner may establish a well-founded fear).

It not only constitutes persecution for the asylum applicant to witness or experience the persecution of family members, but it serves to corroborate *his or her own fear of persecution. See Rodriguez-Matamoros v. INS*, 86 F.3d 158 (9th Cir. 1996) (finding evidence that the applicant's family was threatened with being burned alive, and that she witnessed her sister being tortured and killed in her presence was probative of her fear of persecution arising from the beating she suffered). Furthermore, in assessing the severity of past persecution, the courts have required the Board to consider the treatment of family members. *Kahssai v. INS*, 16 F.3d 323, 329 (9th Cir. 1994) (stating that relevant factors do include not only physical harm suffered by the

---

[4] Forced surgical procedures which offend fundamental human rights standards are not any less a form of torture or persecution because they happen to coincide with a governmental objective. Were that the case, Dr. Mengele's experiments under Hitler and the Nazis would be sanctioned. Considering the invasion of bodily integrity and the fundamental international human rights at stake, I can see no basis on which to exempt a *forcible* sterilization or abortion from being considered persecution on the grounds that it constitutes an official policy of a legitimate government.

applicant, but experiences which adversely affected the applicant's personal, religious, or gender-based identity). The treatment of the applicant's wife supports the conclusion that the applicant, by virtue of the events culminating in his wife's forced sterilization, has suffered past persecution and that his fear is well founded.

Moreover, I find that there is no adverse inference to be drawn from the applicant's conduct in leaving China and seeking refuge in the United States some 18 months after he and his wife were pursued and experienced persecution culminating in her sterilization. The fact that the respondent preceded his family is no different from the cultural practice followed by hundreds of thousands of immigrants and refugees who fled anti-Semitic pogroms in czarist Russia, famine in Ireland, fascism in Germany, political or religious upheaval in other European countries, and civil war and death squads in Central America. The men come first; the husband and father forges the way for the wife and children, who follow when he has established a place to live and a means to support them. In an ideal world, perhaps she who has suffered the more egregious physical persecution should be the first to leave the zone of danger and be afforded refuge. In any event, the applicant's conformity with historical and cultural norms in preceding his wife and family certainly has no bearing either on the merits of his asylum claim or on the exercise of discretion.

## CONCURRING AND DISSENTING OPINION: Lauri S. Filppu, Board Member

I respectfully concur in part and dissent in part.

Given the current state of the law and the positions of the parties on appeal, I agree with the majority that the applicant is entitled to withholding of exclusion and deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h)(1)(1994).[1] I also agree that the applicant qualifies as a refugee under the governing regulations and is eligible for a grant of asylum. Unlike the majority, however, I would remand the case for further proceedings on the question of whether the applicant merits a favorable exercise of discretion in relation to asylum.

## I. REFUGEE STATUS

The "population control" amendment to section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42) (1994), allows a person to qualify as a "refugee" in various ways. In essence, the new statutory language directs a finding of refugee status for any person: 1) who previously was subjected to coercive

---

[1] The equivalent provision for "removal" proceedings is section 241(b)(3)(A) of the Act (to be codified at 8 U.S.C. § 1231(b)(3)(A)), which was created by section 305(a)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-598 ("IIRIRA").

population control procedures (abortion or sterilization); 2) who previously was persecuted for resistance either to such a procedure or to a coercive program; or 3) who currently has a well-founded fear of being forced to undergo an abortion or sterilization or of being persecuted for resisting such measures.[2]

The applicant here does not qualify under the first clause of the new statutory language, as "a person who has been forced to abort a pregnancy or to undergo involuntary sterilization." It was his wife who suffered the sterilization after the birth of the couple's third child in China. Similarly, the applicant does not qualify under the third clause. He has not shown either a subjective fear or a reasonable possibility that he "will be forced to undergo such a procedure" or that he might be "subject to persecution" for a future "failure, refusal, or resistance" on his own account in connection with China's population control practices. *See* 8 C.F.R. § 208.13(b)(2) (1997) (explaining "well-founded fear" test). Indeed, he testified that he had no problems of any sort with the government during the 17 months between his wife's sterilization and his departure from China. And, despite suggestions made by counsel on appeal, there was no claim made during the proceedings below that the applicant intended to divorce his wife or that he otherwise might attempt to have more children with another woman.

Nevertheless, the Immigration and Naturalization Service takes the position in its brief to us, and in the October 21, 1996, General Counsel's memorandum described by the majority, that an alien whose spouse was forced to undergo an abortion or an involuntary sterilization has suffered past persecution. Neither the brief nor the General Counsel's memorandum sets forth the reasoning behind this position on "joint spousal persecution." With respect to the language of the statutory amendment itself, the Service's position would seem to depend on the alien's qualifying, under the second statutory clause, as one "who has been persecuted for failure or refusal to undergo" an abortion or sterilization "or for other resistance to a coercive population control program."

It seems to me that the infliction of an abortion or sterilization procedure on one spouse may or may not lead to the conclusion that the other spouse has been persecuted. For example, a couple may jointly want more children and oppose their government's efforts to restrict family size. In these

_____

[2] Section 601(a) of the IIRIRA, 110 Stat. at 689, added the following sentence to the definition of "refugee":

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

circumstances, the sterilization of one spouse adversely affects both, as is claimed to have occurred to the applicant now before us. On the other hand, a particular husband might believe the family has enough children. He then might not oppose the family's compliance with a country's population control laws through his wife's sterilization, even though she may vigorously disagree. Under the amended statute, the wife's sterilization would amount to qualifying persecution of her. But it is not self-evident to me why the wife's sterilization would necessarily amount to past persecution of the consenting husband.

No doubt arguments can be made on both sides of this joint spousal persecution issue, depending conceivably on such matters as the depth of the family's opposition to the invasive procedure employed by their government and the degree of the couple's actual interest in expanding the family. But none of these arguments are now before us. The Service concedes that this applicant should be found to have suffered past persecution. Moreover, I see this question of joint spousal persecution as quite murky, and not likely subject to a "blanket" ruling covering all such cases uniformly. Consequently, I would neither accept the Service's position as properly extending to all cases of this sort, nor attempt to lay down any rule at this time. Rather, I simply accept the Service's concession of past persecution in *this* case, as such a determination is not foreclosed on this record.

## II. THE REGULATORY PRESUMPTIONS

As the majority notes, the "past persecution" determination and the absence of evidence of changed country conditions lead to automatic conclusions under the current regulations. Under 8 C.F.R. §§ 208.13(b)(1)(i) and 208.16(b)(2) (1997), the applicant is deemed to have a continuing well-founded fear of persecution and to qualify for withholding of exclusion and deportation. There is no discretionary component to withholding of exclusion and deportation under section 243(h)(1) of the Act, nor is there any indication in the record that the applicant might fall within any of the categories of persons barred from this relief under section 243(h)(2). Thus, a grant of withholding is in order.

Asylum, however, does have a discretionary component. Moreover, I am reluctant to give the regulatory presumption conclusive effect, in relation to the exercise of discretion, in all cases. This is particularly true where the claimant himself asserts no qualifying fear of future harm and where there seems to be little actual chance of future persecution, notwithstanding the lack of changed country conditions. The regulatory presumption arising from a past persecution finding is certainly appropriate. So, too, is looking at changes in country conditions as a principal basis for overcoming the presumption. But this case points out that circumstances other than changed country conditions can negate the existence of a well-founded fear of persecution as a matter of *fact*.

As unfortunate as it was, the wife's sterilization brought the applicant's family into future compliance with China's family planning rules. There is no evidence that Chinese authorities sought to harm this applicant in any way during the 17 months he stayed in China after that sterilization. When asked what he feared if returned to China, the applicant merely said he might be fined or jailed for departing without permission and for lacking a passport. Any "continuing effect" arising from the past sterilization of his wife, specifically, the inability to have more children, will exist regardless of where the applicant and his wife reside. More importantly, this factor is not a "new" injury to be feared by the applicant on return to China. Consequently, it should be weighed as a factor bearing on the exercise of discretion, not on whether the Chinese Government may inflict new suffering on the applicant.

The majority does not discuss the discretionary side of this case. I recognize that no clear guidance may emerge from such a discussion in the context of this case. But, I would not entirely postpone that question for future cases. Nor do I believe that a generally appropriate regulation controlling eligibility findings also controls discretionary determinations in those cases where the reasonable assumptions underlying the regulation are belied by the actual facts.

## III.  DISCRETION

The applicant testified that both he and his wife opposed the sterilization, that he received no notice that it was going to occur, and that family planning officials entered his home at midnight to seize his wife for the procedure. It certainly is reasonable to infer from these facts that the applicant may have wanted more children. But he never was asked that question and did not volunteer the information during his hearing.

China's family planning practices, moreover, did not prevent the applicant from having any family. The applicant has already fathered three children, two girls and one boy. He paid a 2,000 yuan fine at one point, but also testified that he earned between 800 and 1,000 yuan per month running his own construction business, a partnership. For this applicant, the fine represented between 2 and 3 month's earnings.

The applicant said he was unemployed, however, for about 8 months prior to his departure from China. The circumstances leading to that unemployment were not fully developed. The Immigration Judge expressed some concerns during the hearing respecting the applicant's credibility, and may have been concerned that the applicant's motive for leaving China was purely economic. Nevertheless, the Immigration Judge did not make an adverse credibility finding. And, given the overall consistency of the applicant's testimony in general, I would not make such a finding on appeal.

In the end, I find the record to be inadequate in terms of making an intelligent exercise of discretion on the request for asylum. It is not clear that the

severity of the joint spousal persecution by itself would warrant a discretionary grant without some perceptible threat of future harm in fact. In this respect, I understand the aim of our refugee provisions to be the *protection* of persons from the risk of future harm. Those provisions are not aimed fundamentally at providing *compensation* for injuries inflicted by foreign governments or by groups not controlled by those governments, even though relief can be obtained for past persecution alone under limited conditions. *See* 8 C.F.R. § 208.13(b)(1)(ii) (1997) (providing that past persecution alone can warrant relief if the applicant shows "compelling reasons for being unwilling to return" to the home country "arising out of the severity of the past persecution"); *see also Matter of Chen*, 20 I&N Dec. 16 (BIA 1989).

While the applicant now qualifies as a refugee, he did not so qualify under our ruling in *Matter of Chang*, 20 I&N Dec. 38 (BIA 1989), at the time the Immigration Judge rendered his decision. The Immigration Judge quite naturally did not approach the case from the perspective of the current statute. As a result, the record, in my view, was not sufficiently developed for purposes of exercising discretion under the changed law. I believe a remand is needed to more fully assess the discretionary aspects of the case and the "severity of the past persecution" for this applicant, as well as to explore any lingering credibility concerns.

*DISSENTING OPINION:* Fred W. Vacca, Board Member

I respectfully dissent.

The applicant appealed from the decision of the Immigration Judge dated December 9, 1994, finding him excludable and denying the relief of asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1253(h) (1994). The basis of the applicant's asylum claim was his opposition to the population control policies of the People's Republic of China. During the pendency of this applicant's appeal, the definition of refugee was amended by section 601(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-689 ("IIRIRA"). The Immigration and Naturalization Service has now conceded the applicant's eligibility for asylum pursuant to that change in the law, and the majority would grant asylum and withholding of deportation based on that concession. I disagree with the majority. Therefore, I would deny the asylum application and dismiss the applicant's appeal.

## I. REQUIREMENTS FOR ASYLUM AND WITHHOLDING OF DEPORTATION

To establish eligibility for withholding of deportation pursuant to section 243(h) of the Act, an alien must demonstrate a clear probability of persecution in the country designated for deportation on account of race, religion,

nationality, membership in a particular social group, or political opinion. *INS v. Stevic*, 467 U.S. 407 (1984). The alien's facts must establish that it is more likely than not that he or she would be subject to persecution for one of the grounds specified in the Act. *Id.*

An applicant for asylum bears the evidentiary burdens of proof and persuasion in any application for asylum under section 208 of the Act. *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985), *modified on other grounds, Matter of Mogharrabi,* 19 I&N Dec. 439 (BIA 1987); 8 C.F.R. §§ 208.13(a), 242.17(c)(4)(iii)(1997). To establish eligibility for asylum under section 208 of the Act, an alien must meet the definition of a "refugee." *See* section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1994), *as amended by* section 601(a) of the IIRIRA. Accordingly, the alien must show persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Id*. In addition, the statute specifically provides:

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Section 101(a)(42)(A) of the Act.

## II.  FACTS

The applicant attempted to enter the United States on April 23, 1993. He testified that he was a privately employed construction worker in China who was forced to comply with China's population control policies. After the birth of his first child, his wife was forced to obtain an IUD, which was later removed without governmental authority. The applicant stated both in his testimony and in his brief on appeal that he was arrested and detained for 1 day by the brigade officials after he protested the fact that his wife was forced to have an IUD inserted "right in their home." After the applicant's wife became pregnant with their second child, she was notified to go for an abortion, but avoided this procedure by hiding with relatives. She subsequently returned home for the birth of their second child. The applicant claimed that he and his wife then left the infant with relatives for the first year after her birth to avoid punishment for violating the population control policies. When questioned by birth control officials about the result of the second pregnancy, the applicant claimed to officials that the child had been stillborn. The applicant stated in his brief on appeal that this was emotionally stressful, and that, when he falsely reported to the authorities that his daughter had been stillborn, this amounted to "cursing" the child. The applicant and his wife were later fined 2,000 yuan. The applicant's wife subsequently gave birth to a third

child, and the applicant asserted that it was after this birth that his wife was forcibly sterilized. At that time, the applicant objected and was threatened with arrest. He claimed in his appeal brief that the trauma he suffered by witnessing his wife being forced to undergo two "invasive and potentially dangerous procedures" was such that the Board should apply the principles of tort law and conclude that the applicant's emotional distress was sufficient to constitute persecution. Finally, he contended on appeal that "as the [applicant] is still married to his present wife . . . the sterilization of his wife also effectively ends his ability to have more children." He cited *Fisher v. INS*, 37 F.3d 1371 (9th Cir. 1994), *withdrawn on rehearing en banc*, 79 F.3d 955 (9th Cir. 1996), and *Fatin v. INS*, 12 F.3d 1233 (3d Cir. 1993), and asserted that Chinese authorities have engaged in "extreme conduct" which is "tantamount to persecution" and that the resulting anguish should be considered.

## III.  APPLICANT'S ELIGIBILITY FOR RELIEF

I would find that this applicant, a Chinese male who personally has not undergone or faced the threat of involuntary sterilization, does not come within the definition of a "refugee" as newly defined by section 601(a) of the IIRIRA. The statute is specific and includes only those who were forced to undergo sterilization or abortion, or who were persecuted for failure or refusal to undergo such a procedure. The applicant in this case was not forcibly sterilized in China. He did not refuse to undergo such a procedure. Although he protested the fact that his wife was forced to undergo the procedure, what happened to him as a result of his protest, a 1-day detention and a fine, was not a level of harm I would find to be past persecution. The majority's attempt to interpret the applicant's claim as "*imputed* past persecution" based on the past persecution of the applicant's wife defies the rules of statutory construction and is unsupported by the case law. If Congress had desired to include spouses of individuals who had been forced to undergo involuntary abortion or sterilization procedures, they would have done so expressly in the statute. They did not. As the applicant is in this country without his wife, and as this is not a joint application, he has not demonstrated past persecution within the meaning of the statute. Likewise, the fact that the applicant's wife has already undergone a sterilization procedure effectively ended the likelihood that this applicant would be forced to undergo such a procedure in the future, or that he would be persecuted for a failure to undergo such a procedure if he returns to China. The applicant acknowledged that nothing happened to him in China after his wife underwent the sterilization procedure, despite the fact that he remained in China for an additional 18 months. There is nothing in this record to persuade me that this applicant has a well-founded fear of persecution in China.

I also believe that the majority selected the wrong case to test its shaky theory, because this case presents a genuine credibility issue. As noted by the

Immigration Judge in his decision, the applicant appeared to be bolstering his claim at the hearing. The Immigration Judge specifically noted that the applicant's story "is changing or getting better from the original claim submitted in July 1993." Although the applicant's attorney preferred to describe the additional information provided at the hearing as an "elaboration" of the "bare-bone" asylum application, the fact remains that certain very important aspects of the applicant's claim were not mentioned in his initial application. For example, the applicant testified that his wife was forced to have the IUD inserted at their home, and indeed, stated in his brief on appeal that his wife was "grabbed and pinned down by these officials who treated [her] like an animal while he was being taken away and detained, unable to protect his wife as the head of the family." He did not mention this incident at all in his initial asylum application submitted on July 29, 1993. Although he amended his application almost 1 year later to include the IUD insertion and the 1-day detention, the amendment actually contradicted the applicant's subsequent testimony and his brief on appeal, for it indicates that, "after the birth of [his] first child, [his] wife was *taken away* to have the IUD inserted." (Emphasis added.) No mention was made in either the initial application or the amendment to the application that the applicant's wife was forced to have the IUD inserted at home or while the applicant stood helplessly by. In addition, the applicant claimed both in his testimony and in his brief on appeal that he and his wife were forced to go into hiding to avoid the abortion of their second child, that the child was left with relatives for the first year of life, and that they were forced to claim that the child was stillborn to avoid punishment for having a second child. Neither the asylum application nor the amendment makes mention of these claims.

Finally, I note that there is essentially no corroborative evidence to support the applicant's assertion that his wife was sterilized or that her sterilization was involuntary. The applicant's wife was not present in the courtroom for cross-examination, even though it was she who was most affected by these incidents. Although the record contains an unauthenticated copy of a purported sterilization certificate, there is no indication other than the applicant's own testimony that this document is valid or that the applicant's wife undertook this procedure involuntarily. Moreover, the most significant background evidence submitted by both sides is contradictory, with the applicant submitting newspaper articles claiming a harsh crackdown on births in China and the Government submitting a State Department document dated November 9, 1993, which indicates that there may be "*no* child limits" in Chang Le County, the same area from which this applicant purportedly has "fled." Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China - Profile of Asylum Claims & Country Conditions* (Nov. 1993). In short, the applicant has not met his burden of proving statutory eligibility for the relief requested absent corroborating evidence. *See Matter of S-M-J-* 21 I&N Dec. 722 (BIA 1997); *Matter of Dass*, 20 I&N Dec. 120 (BIA 1989).

# IV. CONCLUSION

I would find that no past persecution or well-founded fear of future persecution has been shown in this case, notwithstanding the recent amendment to section 101(a)(42) of the Act. Accordingly, the appeal should be dismissed.

*DISSENTING OPINION*: Gustavo D. Villageliu, Board Member

The majority concludes that the applicant in this case qualifies for asylum based on imputed past persecution derived from his wife's alleged forced sterilization in 1988. I respectfully dissent.

The facts in this case are detailed in the majority's decision which relies for its conclusion on section 601(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-689 ("IIRIRA"), which amended the refugee definition of section 101(a)(42) of the Immigration and Nationality Act, 8 U.S.C. § 1101 (a)(42) (1994). Section 601(a) reads as follows:

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedures or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

A narrow reading of section 601(a) does not support a grant of asylum to this applicant. He has not been forced to abort a pregnancy or undergo involuntary sterilization. His wife allegedly has. The brief 1-day detention and fine he claims to have suffered for resisting has consistently been held not to rise to the level of persecution. *See Abdel-Masieh v. INS*, 73 F.3d 579 (5th Cir. 1996); *Anton v. INS*, 50 F.3d 469 (7th Cir. 1995); *Prasad v. INS*, 47 F.3d 336 (9th Cir. 1995).

The threat of a future arrest if the applicant resists birth control measures in the future has clearly been rendered moot if his wife was sterilized in 1991 as he claims. Consequently, the presumption of a well-founded fear of future persecution prescribed by 8 C.F.R. § 208.13(b)(1)(i)(1997) and *Matter of H-*, 21 I&N Dec. 337 (BIA 1996), appears inapplicable.

I do not question the applicant's wife's potential eligibility under section 601(a) of the IIRIRA if she has been forcibly sterilized, or the applicant's derivative eligibility under 8 C.F.R. § 208 if she were granted refugee status. *See Matter of X-P-T-*, 21 I&N 634 (BIA 1996). However, I do not agree that her potential eligibility based on past persecution can be imputed to the applicant when she is not present in the United States applying for asylum. Admittedly, my reluctance to join the majority is that I find it implausible that the natural reaction of a husband whose wife has been sterilized, and who deems it persecutive, would be to then proceed to the United States seeking asylum, leaving her behind. Section 101(a)(42) of the Act requires that the reason the

refugee is unable or unwilling to return to his country be because of the persecution.

Finally, in view of the limited number of refugee admissions available under section 601(a) of the IIRIRA, I would not extrapolate its reach to impute past persecution where an applicant has not "been forced to abort a pregnancy, or to undergo involuntary sterilization, or . . . persecuted for failure or refusal to undergo such a procedure, or for other resistance to a coercive population control program." I also would not grant asylum at this time when unresolved credibility questions remain unanswered in this case. *See Matter of S-M-J-*, 21 I&N Dec. 722 (BIA 1997). Consequently, I respectfully dissent.[1]

---

[1] My dissent should not be misinterpreted as disagreement with section 601(a) of the IIRIRA based on our prior precedent in *Matter of Chang*, 20 I&N Dec. 38 (BIA 1989), in which I did not participate and which I always found troubling. Moreover, Chinese asylum applications should be given heightened consideration due to the Chinese Government's atrocious human rights record. *See Matter of Chen*, 20 I&N Dec. 16 (BIA 1989); *cf. Matter of Mogharrabi*, 19 I&N Dec. 439, 446 (BIA 1987) (discussing the inclination and capability to persecute as factors in assessing asylum applications); *Matter of Acosta,* 19 I&N Dec. 211, 226 (BIA 1985), *modified on other grounds, Matter of Mogharrabi, supra*. However, in view of the limit of 1000 per year on asylum grants based on resistance to coercive population control policies prescribed by section 207(a)(5) of the Act (to be codified at 8 U.S.C. § 1157(a)(5)), I would read section 601(a) narrowly to protect only those explicitly contemplated by the statute.