

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-2005

# Gao v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2577

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Gao v. Atty Gen USA" (2005). *2005 Decisions.* Paper 386.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/386

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――

No. 04-2577

―――

MING GAO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

―――

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A95-864-224)

―――

Submitted pursuant to Third Circuit LAR 34.1(a)
September 27, 2005

Before: RENDELL, FUENTES and GARTH, Circuit Judges.

(Filed: October 19, 2005)

―――

OPINION OF THE COURT

―――

FUENTES, Circuit Judge.

  Ming Gao petitions for review of a decision by the Board of Immigration Appeals

("BIA") affirming the rejection by an Immigration Judge ("IJ") of his applications for asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and voluntary departure in lieu of removal. We find that there is substantial evidence to support the IJ's and the BIA's decisions and accordingly deny Gao's petition.

## I. Facts and Procedural History

Because we write only for the parties, we will recount only the essential facts. A native of the People's Republic of China, Gao illegally entered the United States on or around December 10, 2001. He concedes that he is removable under Section 237(a)(1)(A) of the Immigration and Nationality Act, 8 U.S.C. 1227(a)(1)(A), but has applied for asylum, withholding of removal, protection under CAT, and, those failing, voluntary departure in lieu of removal.

Gao is married and has two children. Though his wife Shu Fang Lin is also a Chinese national in the United States illegally, their two children, both born in Pennsylvania, are American citizens. Gao claims that if he is removed from the United States and returned to China, he and his family will be subject to China's coercive family planning policies and possibly fined or jailed. In supporting these claims, Gao makes two primary arguments: 1) that Lin, his wife, has been a victim of a past persecution in the form of her having been forced to have an abortion in 1999 and 2) that should they be forced to return to China, the family would face likely future persecution based upon both i) their having two sons in violation of China's one child per family policy and ii) their having left China illegally.

2

Making similar arguments, Lin sought asylum in the United States in 2001; her application was denied.

The United States Immigration and Naturalization Service (now part of the Department of Homeland Security) initiated removal proceedings by serving Gao with a Notice to Appear. Conceding removability, Gao argued in his removal proceedings that he should be deemed a refugee and permitted to stay in the United States. At the conclusion of the removal proceedings, the IJ determined that both Gao and Lin (who both testified) lacked credibility and denied all four of Gao's applications. Additionally, the IJ determined that there was no evidence Lin was once forced to have an abortion in China or that Gao and Lin were likely to face persecution if deported. The BIA affirmed in an opinion adopting the IJ's decision and adding brief additional analysis relating to the likelihood of the couple's being persecuted for having two children or for having left China illegally. Gao timely filed an appeal of the BIA's dismissal to this Court.

## II. Discussion

Because the BIA both adopted the findings of the IJ and discussed some of the bases of the IJ's decision, we review the decisions of both the BIA and the IJ. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). For the reasons discussed below, we affirm.

A.    Adverse Credibility and Past Persecution

We review adverse credibility determinations for substantial evidence. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Under this deferential standard of review, we

must uphold the IJ's adverse credibility determination and the BIA's affirmance thereof unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Hence, for Gao to prevail, the evidence of credibility must be so strongly in his favor that this Court concludes there is simply no way a competent adjudicator could have determined that he and his wife lacked credibility. We should note, however, that adverse credibility determinations "based on speculation or conjecture, rather than on evidence in the record, are reversible." Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc) (quoting Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002)).

Here, there is ample evidence that the determinations as to Gao's and Lin's credibility were supported by the record. Though there are many examples, certain discrepancies stand out. For instance, Gao claims Lin was forced to have an abortion in China, yet provides no medical evidence of the procedure having occurred other than a Chinese hospital certificate of questionable origin. Given that she has had two children in the United States–at least one of them in a Philadelphia hospital–Lin clearly had access to medical corroboration, and because a forced abortion is the only past persecution alleged to have occurred in China, it was surely reasonable for the IJ to conclude such persecution never occurred in light of the evidence before her. Similarly, in discussing their marriage that took place in New York, Gao and Lin offered accounts contradicting each other as to essential details, including whether there was a ceremony at all, whether the ceremony

4

took place in a church, and whether it was presided over by a minister. Perhaps most importantly, the IJ had the advantage of observing Gao and Lin on the witness stand. Based on her observations, she noted that while the husband and wife had no trouble answering questions covered in their affidavits quickly and coherently, they seemed to have a great deal of trouble answering even the most simple factual questions that were not covered in their affidavits, often hesitating before answering and offering internally inconsistent responses. This behavior further suggests a pronounced lack of credibility. Finally, we note that the IJ detailed the reasons why she made each of her adverse credibility determinations, effectively showing that she was in fact basing each of her determinations on evidence in the record pursuant to her duty under Dia. We see no evidence compelling us to reach the conclusion that the IJ improperly made her adverse credibility determinations.

We add briefly that the mere fact some of the factual determinations the IJ made eventually proved incorrect does not compel us to determine that a reasonable fact-finder would not have made the adverse credibility determinations the IJ made based on the record and evidence before her. So while it is true that the IJ's speculation 1) that Gao was not the father of Lin's first child because his name did not appear on the child's birth certificate and 2) that the couple is not in fact married may be incorrect,[1] we acknowledge

_____

[1] A DNA test performed after the IJ issued her Oral Decision proved that Gao is the child's biological father. The purported existence of the couple's marriage is less clear, but the existence of a marriage certificate from Monroe, New York–the third American

5

that the IJ had to make a number of difficult factual findings and recognize that the totality of the circumstances justified her determinations. Most importantly, none of possibly erroneous factual determination the IJ made are essential to our analysis and ultimate denial of Gao's petition.

B.    Likelihood of Future Persecution

We also affirm the IJ's and BIA's determination that Gao failed to show he would more likely than not face persecution if forced to return to China. See Cao v. AG of the United States, 407 F.3d 146, 153 (3d Cir. 2005) (stating "more likely than not" standard). We accept the IJ's and BIA's determination that the mere fact Gao and Lin have two children does not make it more likely than not they will be persecuted upon returning to China. Though such persecution may have been common in the past, we accept the IJ's and BIA's determination that China's central government now prohibits the use of force to compel women to submit to abortion or sterilization. While we accept the notion that these practices still take place in certain rural parts of China–as well as the assertion that Gao and Lin may be subject to fines for violating China's one child per family policy–Gao failed to show that his and his wife's town of origin, Changle City, is such a place. Further, as discussed above, we agree with the IJ's determination that no medical proof was presented of Lin's forced abortion, the only past persecution Gao alleges. And whereas "a showing of past persecution gives rise to a rebuttable presumption of a

jurisdiction where the couple sought a license–suggests that they may in fact be married.

6

well-founded fear of future persecution," here no such showing has been made.  Id.  The lack of conclusive evidence as to past persecution buttresses our view that a claim of future persecution has not been established.

The BIA added two arguments in its affirmance of the IJ's Oral Decision.  First, it pointed out that regardless of whether the couple's New York marriage was legitimate, the fact that Gao concedes that the couple was never officially married in China extinguishes his past persecution claim based upon Lin's alleged forced abortion.[2]  We need not address this issue, as we believe the IJ and BIA were correct in their determination that Gao has failed to establish that a forced abortion occurred.  Second, the BIA added that the claim that Gao will face persecution for leaving China illegally would not, if true, constitute persecution.  We concur.  See Matter of Sibrun, 18 I. & N. Dec. 354, 359 (BIA 1983); see also Janusiak v. INS, 947 F.2d 46, 48-49 (3d Cir. 1991).

### III. Conclusion

For the foregoing reasons, we deny Gao's petition for review.

––––––

---

[2]The BIA has extended asylum protection to include the husband of a woman who has been sterilized or otherwise subject to a coercive population control program, as defined by 8 U.S.C. § 1101(a)(42)(B).  In re C-Y-Z, 21 I. & N. Dec. 915, 918 (BIA 1997).  In C-Y-Z, the BIA found that a husband of a woman forcefully sterilized could "stand in her shoes" in the context of his pursuit of asylum.  Id.

7