

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-7-2005

# Yang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3362

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Yang v. Atty Gen USA" (2005). *2005 Decisions.* Paper 151.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/151

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3362

———

Ding Ping Yang,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A95-378-329)

———

Submitted pursuant to Third Circuit LAR 34.1(a)
November 14, 2005

Before: ROTH, FUENTES, and BECKER, Circuit Judges.

(Filed: December 7, 2005)

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

    Ding Ping Yang petitions for review of a decision by the Board of Immigration

Appeals ("BIA") affirming the rejection by an Immigration Judge ("IJ") of his applications for asylum and withholding of removal protection under the Convention Against Torture ("CAT"). We find that there is substantial evidence to support the IJ's and the BIA's decisions and accordingly deny Yang's petition.

## I. Facts and Procedural History

Because we write only for the parties, we will recount only the essential facts. A native of the People's Republic of China, Yang illegally entered the United States on or around July 4, 2001. He concedes that he is removable under Section 237(a)(1)(A) of the Immigration and Nationality Act, 8 U.S.C. 1227(a)(1)(A), but has applied for asylum and withholding of removal protection under CAT.

Yang is thirty-eight years old and has a wife and two children back in China. Yang was the only witness to testify at his hearing before the IJ. Yang claims that if he is removed from the United States and returned to China, he and his family will be subject to China's coercive family planning policies and possibly fined. At his hearing, Yang testified that one week after his wife gave birth to their daughter in 1991, Chinese family planning officials ordered his wife to have an intrauterine device ("IUD") inserted. He further testified that after the birth of the child his wife was required by Chinese family planning officials to report for physical examinations four times per year. In 1994, Yang claims, his wife went to a private doctor without government permission to have the IUD removed so that she and Yang could have additional children. The couple then moved to another village so as to

2

allow Yang's wife to avoid her mandatory quarterly examinations, and she soon thereafter again became pregnant. Yang claims that his wife was forced to abort this second fetus. Thereafter, Yang and his wife achieved a third pregnancy. The child resultant of that pregnancy was born in 1996. Yang asserts that two days after the birth of his second child, Chinese officials threatened his wife with forced sterilization. The officials claimed that if Yang's wife would not be sterilized, Yang would have to be, and that if neither of them complied, they would have to pay a fine of 4,000 yuan. Though the couple again fled and escaped this fate for a time, Yang claims that his wife was sterilized in April of 2001. Yang asserts that he fled China for the United States later that year out of fear that he too might be sterilized.

On April 24, 2002, The United States Immigration and Naturalization Service (now part of the Department of Homeland Security) initiated removal proceedings by serving Yang with a Notice to Appear. Conceding removability, Yang argued in his removal proceedings that he should be granted asylum and withholding of removal from the United States. At the conclusion of the removal proceedings, the IJ determined that Yang lacked credibility and denied Yang's applications. In addition to her holding, the IJ notably included in her opinion the conclusions that: (a) if Yang's wife had in fact already been sterilized, Yang should have no fear of future persecution in the form of being himself sterilized because the Chinese authorities would no longer be concerned that Yang and his wife might have more children; and (b) the suggestion that the Chinese government would coerce an abortion at eight

3

months' gestation was incredible. Yang appealed to the BIA, which adopted the IJ's holding, but added that it disagreed with the two supplemental conclusions just noted. Yang timely filed an appeal of the BIA's dismissal to this Court.

## II. Discussion

Because the BIA both adopted the findings of the IJ and discussed some of the bases of the IJ's decision, we review the decisions of both the BIA and the IJ. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). For the reasons discussed below, we affirm.

A.    Adverse Credibility and Past Persecution

We review adverse credibility determinations for substantial evidence. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Under this deferential standard of review, we must uphold the IJ's adverse credibility determination and the BIA's affirmance thereof unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Hence, for Yang to prevail, the evidence of credibility must be so strongly in his favor that this Court concludes there is simply no way a competent adjudicator could have determined that he and his wife lacked credibility. We should note, however, that adverse credibility determinations "based on speculation or conjecture, rather than on evidence in the record, are reversible." Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc) (quoting Gao, 299 F.3d at 272).

Here, there is ample evidence that the IJ's determinations as to Yang's credibility were supported by the record. Though there are many examples, certain discrepancies

4

stand out. For instance, Yang at one point testified that his wife was sterilized in August of 1996, two days after giving birth to their second child, only later to assert that she was sterilized nearly five years later, in April of 2001. This is not a small mistake of a few days, but a crucial discrepancy as to the strongest evidence in favor of Yang's being granted asylum, namely his wife's past persecution in the form of forced sterilization. There were also substantial inconsistencies as to how far along Yang's wife's pregnancy was when it was discovered.

Another example of the reasonableness of the IJ's adverse credibility determination springs from Yang's assertion that one of the reasons he fled China was to avoid the 4,000 yuan fine he was subject to for violating Chinese family planning laws, while at the same time claiming that he paid roughly 400,000 yuan in order to get to the United States. We agree that Yang's assertion that he would pay 400,000 yuan in order to avoid a fine one hundredth of that amount strains credulity. As these examples illustrate, there was substantial evidence to support the IJ's adverse credibility determination.

We add that though we are affirming the IJ's decision, we agree with the BIA's reluctance to embrace certain of the IJ's determinations. The IJ's assertion that to the extent his wife has been sterilized Yang has no fear of future persecution is without merit, as such a sterilization, if proven, would establish past persecution and the presumption of

5

future persecution.[1] We also believe the IJ lacked foundation to find it "incredible that the government of China would force an abortion upon a woman who was eight months pregnant" as a general matter. IJ Opp. at 15. In spite of our disagreement with the IJ on these points, however, we nonetheless conclude that the IJ had substantial evidence to find the totality of Yang's testimony to be incredible and to conclude that he has not suffered past persecution in China.

B.      Likelihood of Future Persecution

We also affirm the IJ's and BIA's determination that Yang failed to show he would more likely than not face persecution if forced to return to China. See Cao v. AG of the United States, 407 F.3d 146, 153 (3d Cir. 2005) (stating "more likely than not" standard). Given Yang's failure to establish past persecution, his claim that he is likely to face future persecution fails as well, as it is upon the former which his latter claim rests. See, e.g., Yang Br. at 24-25 (arguing that Yang "suffered past persecution and [is] likely to face persecution upon return to China on account of his history of violation of [its] family planning policy"). There is nothing in the record to indicate that Yang is more

---

[1]The BIA has extended asylum protection to include the husband of a woman who has been sterilized or otherwise subject to a coercive population control program, as defined by 8 U.S.C. § 1101(a)(42)(B). In re C-Y-Z, 21 I. & N. Dec. 915, 918 (BIA 1997). In C-Y-Z, the BIA found that a husband of a woman forcefully sterilized could "stand in her shoes" in the context of his pursuit of asylum. Id. The BIA added that "[i]nasmuch as the applicant has adequately established that he suffered past persecution, there is a regulatory presumption that he has a well-founded fear of future persecution under 8 C.F.R. § 208.13(b)(1)." Id. at 919.

likely than not to be subject to persecution should he return to China.

### III. Conclusion

For the foregoing reasons, we deny Yang's petition for review. Hence, *a fortiori*, we reject his application for withholding of removal.

———