**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**
*(Argued June 14, 2005)*

Decided October 24, 2005

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-1551

| | | |
|---|---|---|
| ZHI ZHI CHEN, | | On Petition for Review from the |
| | *Petitioner*, | Board of Immigration Appeals |
| *v.* | | No. A 77-774-695 |
| ALBERTO R. GONZALES, Attorney General of the United States, | | |
| | *Respondent*. | |

**O R D E R**

Zhi Zhi Chen, a 23-year-old male Chinese national, claims that he was persecuted based on his resistence to China's notorious birth-control measures. Chen applied for asylum, withholding of removal, and relief under the Convention Against Torture, but the Immigration Judge denied relief, concluding that Chen was not credible and not eligible for asylum. The Board of Immigration Appeals summarily affirmed the IJ's decision. Chen petitioned for review, but we find that the IJ's decision was supported by substantial evidence and we therefore deny the petition.

# I

At the removal hearing, Chen testified that he and his girlfriend were denied a marriage certificate in the summer of 1998 because they were below the legal age for marriage: 20 for women and 22 for men. Shortly thereafter, his girlfriend became pregnant, and the couple relocated to the countryside to live with his parents. In March 1999, at a time when Chen was not at home, family planning officials came to his parents' house and took his girlfriend away. Upon returning home and finding her gone, Chen suspected that she had been taken to have an abortion. He rushed to her hometown hospital only to spot her as she was being wheeled into the operating room. He attempted to charge into the operating room, but he was physically restrained by family planning officials. After two hours, his girlfriend emerged from the operating room, pale and crying, and Chen said that he "knew right away" that an abortion had been performed on her.

Chen then went to the local family planning office and confronted the officials there about the abortion. They directed him to another office, where he angrily denounced the policy, using profanity and overturning one table. The officials then called the police, while onlookers advised him that his outrage was futile and he should flee before the police arrived. He took that advice, escaping to a friend's house, where he hid. Soon thereafter, Chen paid snakeheads to smuggle him to the United States.

Chen further testified that he fears being returned to China because, he anticipates, the officials would beat him, detain him, and imprison him for violating the family planning policy, resisting the policy, and fleeing the country without permission. The Service declined to cross-examine Chen.

The IJ found both that Chen was not credible and that his account was legally insufficient. She described Chen's testimony as "vague and implausible" and "meager," and observed that given the circumstances, it was reasonable to expect corroborating evidence such as medical records or affidavits. The IJ also noted that, according to the State Department documents in the record, U.S. consular officials were not aware of any forced abortions of illegitimate children in Fujian province, where these events took place. The IJ also noted that other background information in the record did not reflect that criminal punishment was meted out for family planning violations. Based on these findings, the IJ concluded that Chen had failed to establish that he was a refugee within the meaning of 8 U.S.C. § 1101(a)(42). The judge also noted that he was not the spouse of a person who underwent a forced abortion – he was "merely the boyfriend of a person who was victimized by China's coercive population control laws." As such, the IJ found that he was not covered by the Board's decision in *In re C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997), without expanding the rationale of that decision, which the IJ declined to do. The IJ also rejected the argument that Chen's potential arrest for disorderly conduct qualified him for asylum, because punishment for criminal conduct is not persecution. Finally, the IJ noted that even if Chen had a well-founded fear of persecution, he had failed to show that relocation to another part of China was

unavailable as an option.  The BIA affirmed without opinion.

## II

When the BIA summarily affirms the decision of the IJ, the IJ's ruling becomes the agency's final decision, 8 C.F.R. § 1003.1(e)(4); *Ememe v. Ashcroft,* 358 F.3d 446, 450 (7th Cir. 2004), and this court reviews the IJ's decision directly. *Georgis v. Ashcroft,* 328 F.3d 962, 967 (7th Cir. 2003). We will affirm the IJ's decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole" and is based on "specific, cogent reasons" that "bear a legitimate nexus to the finding." *Krouchevski v. Ashcroft,* 344 F.3d 670, 673 (7th Cir. 2003). To qualify for asylum, a petitioner must show that he is a refugee by proving that he was persecuted in the past or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); *Liu v. Ashcroft,* 380 F.3d 307, 312 (7th Cir. 2004). Under § 1101(a)(42)(B), an asylum applicant may establish persecution by showing that he or she has been forced to undergo sterilization or abortion; has been persecuted for failing to undergo either procedure; or has experienced persecution for other resistance to coercive family planning procedures. *Lin v. Ashcroft,* 385 F.3d 748, 752-53 (7th Cir. 2004).

To the extent Chen is arguing before this court that the IJ erred in concluding that he could not avail himself of relief under § 1101(a)(42)(B) because he and his girlfriend were unmarried, he runs into the problem of deference to the agency's interpretation of the rules. As the IJ pointed out, although *In re C-Y-Z-* found past persecution of a husband based on the forced sterilization of his wife, see 21 I&N Dec. at 919, Chen and his girlfriend were not married and the BIA has never extended the *C-Y-Z-* rule to unmarried couples. Other courts of appeals have accepted this reading of the statute. See, *e.g., Chen v. Ashcroft,* 381 F.3d 221, 227-29 (3d Cir. 2004) (presumption of persecution afforded to spouses of women forced to undergo abortions not extended to unmarried men); *Zhang v. Ashcroft,* 395 F.3d 531, 532 (5th Cir. 2004) (same). The Ninth Circuit extends *C-Y-Z-* to couples who are married in traditional ceremonies, but are unable to legally register their marriage. See *Ma v. Ashcroft*, 361 F.3d 553, 559 (9th Cir. 2004)(BIA decision not to extend *C-Y-Z-* to couples who are married in traditional ceremonies, but not legally registered, was not entitled to deference because § 1101(a)(42)(B) protects "couples"); *Zheng v. Ashcroft*, 397 F.3d 1139, 1148 (9th Cir. 2005) (traditionally, but not legally, married husband eligible for asylum on the basis of wife's forced abortion). Notably, the First Circuit has characterized the case law as a circuit split. See *Chen v. Gonzales*, 418 F.3d 110, 111 & n.2 (1st Cir. 2005) (declining to address the question). And the Second Circuit, in *Lin v. United States Department of Justice*, 416 F.3d 184, 191-92 (2d Cir. 2005), recently remanded a number of cases to the BIA to explain the rationale for limiting the asylum presumption to spouses. We are not persuaded that we should reach a result different than the Third and Fifth Circuits.

We need not decide this issue definitively, however, because Chen's petition failed for a more fundamental reason: an adverse credibility determination. Even if, as Chen contends, it was wrong for the IJ to base her adverse credibility determination solely on his lack of corroborating evidence, see *Lin,* 385 F.3d at 756; *Diallo v. Ashcroft,* 381 F.3d 687, 695 (7th Cir. 2004), any such error made no difference here. He argues that he should prevail on his alternate argument that he was persecuted not as the partner of a woman forced to have an abortion, but instead as a person who himself resisted coercive family planning policies. See § 1101(a)(42)(B) (stating that a person who engages in "other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion"). There is a paucity of cases analyzing the meaning of the term "resistance" under the statute, and Chen has not pointed to anything to support his position that his outburst at the family planning office would qualify. The Third Circuit found in *Cao v. Attorney General of the United States,* 407 F.3d 146, 153 (3d Cir. 2005), that this standard was met where a doctor wrote articles critical of birth control measures and publicized a practice of hospital infanticide. It was not unreasonable, however, for the IJ to characterize Chen's behavior at the family planning office as mere disorderly conduct that fell short of the type of formal and public resistance the doctor in *Cao* demonstrated.

Finally, Chen has not presented any reason for us to reject the IJ's finding that his claim failed because he could have relocated to another part of China. See *Matter of R-,* 20 I&N Dec. 621, 625-27 (BIA 1992). For all these reasons, we DENY Chen's petition for review.