UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted December 19, 2005[*]
Decided December 20, 2005

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 05-1790

PING ZHENG,
    *Petitioner*,

    *v.*

ALBERTO GONZALES,
    *Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals

No. A78-470-874

# O R D E R

Ping Zheng fled China and attempted to enter the United States at the airport in Detroit, Michigan in December 2000.  The Immigration and Naturalization Service initiated removal proceedings and Zheng conceded removability.  However, Zheng claimed that he feared persecution under China's family planning laws, and applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture.  After an asylum hearing, the Immigration Judge determined that Zheng's testimony was not

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

credible because it contradicted statements he made to the immigration inspector at the Detroit airport and to an asylum officer one month later during his credible-fear interview. The IJ denied Zheng's requests for relief and ordered him removed from the United States; the Board of Immigration Appeals affirmed without opinion. Zheng argues that the IJ's credibility finding is not supported by substantial evidence. We deny his petition.

Upon arriving in Detroit, Zheng, through an interpreter, spoke with an immigration inspector and swore under oath that he fled China (Fujian province) because his girlfriend had given birth to their child and that Chinese authorities had beaten him for violating China's family-planning policy. He claimed that his parents, who were now caring for the child, paid $20,000 to a snakehead for him to come to the United States to be reunited with his girlfriend (the mother of his child). The next month an asylum officer conducted a credible-fear interview over the phone with Zheng. Zheng, again speaking through an interpreter, elaborated that he became aware of his girlfriend's pregnancy in January 2000, and that in July 2000 family-planning officials followed him and his girlfriend to their home, where they beat and kicked him. Zheng claimed that the officials demanded that his girlfriend report to them the next day so that an abortion could be performed. But Zheng and his girlfriend ran away together to another city, where the baby was eventually born. Zheng then claimed that he paid to send his girlfriend to the United States and that he followed her here in December 2000 because he feared being arrested, beaten, tortured, and fined.

Zheng submitted a written application for asylum based on his opposition to China's coercive family-planning policies, and made a retraction. He stated that what he told INS earlier was not true and that the snakehead had advised him before leaving China what to tell the INS. He now claimed that Chinese family planning officials went to his girlfriend's home and "dragged" her to the hospital "to undergo an abortion by force." (AR. at 230.) He stated that he first learned of his girlfriend's pregnancy in October 1999 rather than January 2000, as he mentioned during his credible-fear interview. He also claimed that he wanted to get married but because he was 22 years old and his girlfriend was only 17, Chinese law prevented such a marriage, and necessitated the abortion. To corroborate his forced abortion claim, Zheng submitted a copy of a document titled "Abortion Certificate," dated August 25, 2000 (AR 212-15) (which was approximately 10 months after Zheng allegedly learned of the pregnancy). According to the certificate, Zheng's girlfriend was in poor health before the operation. The certificate did not identify the father nor did it state that the abortion was forced.

At his hearing before the IJ, Zheng acknowledged that his testimony contradicted his statements given at his airport interview and his credible-fear interview. Zheng admitted to fabricating the story about his girlfriend giving birth

and stated that she was actually forced to have an abortion. He also admitted to lying about the dates when both he and the government became aware of the pregnancy. He now testified, consistent with his written asylum application, that he first learned of the pregnancy in October 1999, contradicting his earlier statements, given at the airport and in his credible-fear interview, that he found out about the pregnancy in January 2000. He also now claimed that the government discovered the pregnancy on August 25, 2000 (the same date on the "Abortion Certificate"), contradicting his earlier report that the government was aware of the pregnancy in July 2000. Zheng's testimony also contradicted prior sworn statements regarding where he and his girlfriend were living when the government discovered the pregnancy and how he arrived in the United States.

The IJ denied Zheng's application for asylum and withholding based on an adverse credibility finding. The court found that Zheng's testimony contained "wildly differing facts" as well as "serious" discrepancies and omissions. In particular, the IJ noted that she could not reconcile Zheng's first version (that he has a child) with his second version (that his child was involuntarily aborted in China). The IJ found Zheng's story further undermined by other inconsistencies such as whether he had stayed in Taiwan for one month or not after leaving China and before coming to the United States; where the original abortion certificate might be; or whether the girlfriend was discovered by family planning officials while living with Zheng's uncle or actually living at her own home. Thus the IJ concluded that Zheng did not satisfy his burden of proving eligibility for asylum or withholding of removal. The IJ also found that even if Zheng were found credible, 8 U.S.C. § 1101(a)(42)(B) does not provide asylum protection for unmarried men whose girlfriends are forced to have an abortion under China's family-planning policy. Finally, the IJ determined in regard to Zheng's Torture Convention claim that "nothing in this record" shows that the Chinese authorities have "any intent" in torturing Zheng if he were returned to China. The BIA summarily affirmed, making the IJ's ruling the final agency decision, 8 C.F.R. § 1003.1(e)(4); *Ememe v. Ashcroft*, 358 F.3d 446, 450 (7th Cir. 2004).

On appeal, Zheng argues that the IJ's adverse credibility finding was not supported by substantial evidence. He contends that though he contradicted himself and admittedly lied at his airport interview and his credible-fear interview, this is not fatal to his credibility. He states that, had the IJ ignored his airport testimony and statements made during his credible-fear interview, his testimony at his asylum hearing was adequately supported by the abortion certificate and would have qualified him for asylum.

An asylum applicant must establish his eligibility by credibly showing that he suffered past persecution or has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b); *Brucaj v. Ashcroft*, 381 F.3d 602, 606-07 (7th Cir. 2004). If the

IJ determines that the applicant is not eligible for asylum because his testimony was not credible, we will uphold that finding unless it is not supported by "specific, cogent reasons" bearing a "legitimate nexus to the finding." *Id.* (internal quotes omitted). In evaluating an applicant's claim, the IJ may consider statements made prior to the asylum hearing including answers given during a reliable airport interview. *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 923 (7th Cir. 2005). If the IJ determines that the applicant's testimony is not credible, the applicant must provide a convincing explanation for discrepancies in his testimony or extrinsic and credible corroborating evidence. *Id.* at 922.

Here the IJ properly supported her adverse credibility finding. Primarily the IJ found it difficult to believe Zheng's asylum testimony because doing so required resolving "wildly differing facts as to what really happened to the respondent and his girlfriend," without a "plausible explanation for the very serious contradictions." (Petitioner's App. at 16.) Without such an explanation, the IJ found it impossible to know whether Zheng was telling the truth at the airport interview, at his credible-fear interview, or during his asylum hearing. *See Capric v. Ashcroft*, 355 F.3d 1075, 1090 (7th Cir. 2004) (adverse credibility determination upheld when inconsistencies went to the "heart" of applicant's claim). Zheng does not argue that either his airport interview or his credible-fear interview was unreliable, only that his prior testimony should be ignored. But the IJ may consider prior reliable testimony, *Jamal-Daoud*, 403 F.3d at 923, and "lying in a sworn statement is not irrelevant to credibility," *Balogun v. Ashcroft*, 374 F.3d at 504. We conclude that the adverse credibility finding was supported by specific and cogent reasons.[1]

Because the IJ's decision to discredit Zheng's story is properly supported, we will not disturb that determination and need not reach Zheng's challenge to the IJ's alternative holding that 8 U.S.C. § 1101(a)(42)(B) does not extend to extend to unmarried couples the protections afforded to husbands of women subjected to forced abortions. *See Chen v. Gonzales*, No 04-1551, 2005 WL 2709346, at *2 (7th Cir. Oct. 24, 2005).

The petition for review is DENIED.

---

[1] Without elaboration Zheng generally notes that the IJ made a factual error in believing that he testified at his asylum hearing that he was not aware of the pregnancy until August 25, 2000. The government concedes that the IJ misunderstood Zheng's testimony on this point (Respondent's Br. at 31, n. 10), but adds that substantial evidence nevertheless supports the IJ's decision. We agree. Zheng's numerous contradictions were significant and went to the heart of his claim and this error alone does not undermine the adverse credibility finding.