[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 02, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11259
Non-Argument Calendar

_____

Agency No. A97-955-228

GUO LIN,
a.k.a. Ming Chi Cheung,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 2, 2007)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Guo Lin petitions pro se for review of the Board of Immigration Appeals ("BIA") decision dismissing his appeal of the denial by the Immigration Judge ("IJ") of his applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"). Lin contends that he qualifies for derivative protection as a non-legally married spouse under the family planning provision of 8 U.S.C. § 1101(a)(42). We deny in part and dismiss in part.

## I. BACKGROUND

Lin, a native and citizen of the Fujian Province of the People's Republic of China, entered the United States at the Miami International Airport on 12 August 2004. On that day, he was served with a Notice to Appear ("NTA"), charging him with removability, under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who is not in possession of valid entry documents. Lin admitted to the allegations in the NTA and conceded removability as charged.

During his initial immigration interview, Lin stated that he left China in March or April of 2003 because he had a problem with a security officer which led to the issuance of warrants against him and his cousin. AR at 292-93. Lin also stated that his family's home had been destroyed, so that he did not know where they were. He reported that he was not married, and he made no mention of any girlfriend. Id. at 292.

2

Later, Lin requested asylum, withholding of removal, and protection under CAT. In his application, Lin asserted that he had been "persecuted by the coercive family planning policy in China." Id. at 313. More specifically, he reported the following: He and his girlfriend had begun living together in early 2002, but never legally married because they were too young. Although they and their families considered the relationship to be marital, they did not publicize it as such and he referred to her in public as his girlfriend. In September 2002, family planning officials came to their home to take his pregnant girlfriend away for an abortion. Lin tried to stop them, but the officials beat him with their fists and threatened to arrest him. Thereafter, Lin, his parents, and his girlfriend decided that she and Lin should leave China to escape persecution. He was to leave first, and she was to follow. Lin asserted that he feared returning to China because the people who lent his parents the money to smuggle him out of China would torture him. Lin also stated that the Chinese government would torture, beat, jail, and fine him, because he had enlisted the aid of smugglers to help him leave China and did not have the proper documentation for his stay abroad.

Prior to the asylum hearing, the government submitted the United States Department of State's 2004 China: Profile of Asylum Claims and Country Conditions ("Profile") and 2003 China: Country Report on Human Rights Practices ("Country Report"). The Profile reports that the minimum age for

3

marriage in China is 22 for males and 20 for females and that, although cohabiting couples having unauthorized children are likely to be charged "social compensation fees," there is no provision that they be detained or jailed. Id. at 116. The Profile reported that the central government's policy prohibits the use of physical coercion to compel persons to submit to abortion or sterilization although other forms of coercion might be employed. The Country Report described China's family planning program similarly. The Profile also stated that returned illegal emigrants from the United States are rarely fined, are not abused, and are only detained long enough for relatives to arrange for their travel home.

At his October 2005 asylum hearing, Lin testified to the following: He was born in China and his parents still live in the house in which he was raised. He is not married but lived with his girlfriend in China. He came to the United States because he was oppressed by China's family planning policy. Someone reported to officials that his girlfriend was pregnant and, as a result, officials came to their home to take her away for a forced abortion. Lin told the officials that they were going to be married and asked them not to perform the abortion. Lin tried to protect his girlfriend, but was beaten by the officials. Thereafter, the abortion was performed at the local hospital.

Lin first testified that he visited his girlfriend each day in the hospital for a week. Id. at 81. Then, upon further questioning, he stated that he did not know

4

where his girlfriend was, and he admitted that he had not seen her since the officials had come for her and that he had not visited her in the hospital thereafter. Id. at 82. He attempted to clarify his testimony by stating that he had visited his girlfriend in the hospital "before the death occurred." Id. Lin further explained that, after the abortion, he hid at a friend's house two hours away in Fuzhou City, because he knew he was wanted by the family planning office. Lin asserted that his parents decided that he could not stay in China, so they borrowed around $17,000 to pay a smuggler. Id. at 83-84. He left China in March 2003 and traveled through four countries before arriving in the United States.

Lin testified that he was "politically oppressed" in China. Id. at 85. He enumerated three fears: (1) going to jail for using an illegal visa; (2) being fined by the family planning office; and (3) pressure to return all the borrowed money to the smugglers. Upon cross-examination, Lin admitted that he did not possess any documents to prove his relationship with his girlfriend and that he could not find the document proving that his girlfriend had had an abortion. When asked to explain the inconsistency between the story he told at his initial interview and that contained in his application for asylum, he said only "No, it was me who was injured by a security officer out of state." Id. at 90. The IJ specifically observed, in his decision, that there was no apparent problem with interpretation at any point during the hearing. When, the government then asked, "are you saying that you

5

did not tell the airport officials there was a warrant for your arrest in China for you and your cousin?," Lin replied, "They only have a warrant for me." Id.

The IJ denied the application. In his decision, the IJ noted that Lin had admitted he was not married and inconsistently testified about whether he saw his girlfriend after she was taken away for the abortion. Additionally, the IJ noted that Lin had claimed to fear only a fine under China's family planning program and that his fear of imprisonment stemmed from his illegal departure from China. Finally, the IJ observed that Lin had failed to clarify the inconsistency between his asylum application and his initial interview in which he claimed to have left China because of a security officer and related warrant. After summarizing the law regarding asylum, withholding of removal, and CAT protection, the IJ concluded that Lin's allegations did not demonstrate "any reasonable possibility that he would be subject to persecution, or harmed or threatened if returned to China at this time based on any protected ground." Id. at 34. The IJ also made an adverse credibility finding, pointing out that, in addition to other inconsistent testimony, Lin had not even proved that he had a girlfriend, much less one who had been affected by the family planning policy. Because, for all these reasons, Lin had failed to satisfy the lower burden of proof required for asylum, the IJ concluded that Lin had also failed to meet the higher burdens of proof for withholding of removal and CAT relief.

6

Through counsel, Lin appealed the IJ's decision. In his notice of appeal, Lin argued that the IJ had "erred as a matter of law in denying [his] request for political asylum." Id. at 20. He further argued that his testimony was credible and consistent. In his brief, Lin again contended that he qualified for "asylum" based on his girlfriend's forced abortion and that his testimony was credible. Id. at 11, 12. At no point during his appeal to the BIA, did Lin argue that he had otherwise resisted China's family planning program or mention withholding of removal or CAT relief.

The BIA dismissed Lin's appeal, finding "no error in the [IJ]'s determination that Lin failed to meet the burdens of proof relevant to his claims of persecution and torture, even assuming that he testified credibly." Id. at 2. The BIA agreed that Lin

> "did not demonstrate past persecution or a well-founded fear of persecution because his former girlfriend underwent an involuntary abortion in September 2002, because he was struck by family planning officials who came to his parents' home, because he believes he could be fined by family planning officials, because he departed illegally from China, or because his family owes a large debt as payment for his smuggling fees."

Id. In rendering its decision, the BIA specifically relied on In re S-L-L-, 24 I.&N. Dec. 1 (BIA 2006) (en banc). Lin filed a timely petition for review of the BIA's decision.

7

## II. DISCUSSION

A. <u>Withholding of Removal and CAT Relief</u>

As an initial matter, we must determine which issues are properly before us. We "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right.'" 8 U.S.C. § 1252(d)(1); <u>see</u> <u>also</u> <u>Sundar v. I.N.S.</u>, 328 F.3d 1320, 1323 (11th Cir. 2003). Accordingly, we lack jurisdiction to review claims not raised before the BIA. <u>Amaya-Artunduaga v. U.S. Att'y Gen.</u>, 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam). We have decided that we lack jurisdiction to review such a claim even if the BIA has addressed it <u>sua</u> <u>sponte</u>. <u>Id.</u> at 1250-51.[1] Because Lin failed to appeal the IJ's rulings with respect to withholding of removal and CAT relief to the BIA, he has failed to exhaust his administrative remedies as to those claims and we have no jurisdiction to review them.[2]

---

[1]In its opinion, the BIA recognized that the IJ's decision also addressed withholding of removal and CAT relief, but only generally discussed the IJ's "determination that the respondent failed to meet the burdens of proof relevant to his claims of persecution and torture." AR at 2. Accordingly, it is not clear whether the BIA even addressed withholding of removal or CAT relief <u>sua</u> <u>sponte</u>.

[2]Although we hold <u>pro</u> <u>se</u> pleadings "to a less stringent standard than pleadings drafted by attorneys," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), Lin was counseled before the BIA and does not receive the benefit of that liberal construction with respect to this issue.

B. Asylum

Lin did properly appeal the IJ's decision regarding his asylum claim to the BIA and thus, we do have jurisdiction to review that issue. When the BIA issues a decision, "[w]e review only [that] decision, except to the extent that [the BIA] expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA has issued its own decision without expressly adopting any portion of the IJ's decision. We review the BIA's legal determinations de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004).

The Secretary of Homeland Security or the Attorney General has discretion to grant asylum, if an alien meets the INA's definition of a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory refugee status. 8 U.S.C. § 1158(b)(1)(B)(i); see also Al Najjar, 257 F.3d at 1284. To establish

9

asylum eligibility, the alien "must, with specific and credible evidence, establish, (1) past persecution on account of a statutorily protected ground or (2) a well-founded fear of future persecution on account of a protected ground." Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th Cir. 2007);  8 C.F.R. § 208.13(a), (b).  "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" a statutory factor.  Al Najjar, 257 F.3d at 1287 (quotations and citation omitted).  To establish a well-founded fear, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.   "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (quotations and citation omitted).

On the other hand, persons forced to undergo abortions or involuntary sterilizations, or persecuted for refusing to undergo such procedures, or those persecuted for other resistance to a coercive population control program are deemed "persecuted on account of political opinion."  8 U.S.C. § 1101(a)(42)(B). Similarly, a "well founded fear" of such persecution satisfies the requirement.  Id. The BIA has approved the extension of refugee protection under this section to

10

applicants whose spouses have suffered forced abortion or sterilization.  See In re

C-Y-Z, 21 I.&N. Dec. 915, 918-19 (BIA 1997) (en banc).  However, it has also

limited that protection to spouses in legally recognized marriages.  In re S-L-L-, 24

I.&N. Dec. 1, 7-10 (BIA 2006) (en banc).  We have concluded that, assuming the

extension of protection under this section to spouses is a reasonable interpretation

of the statute, the BIA's decision to deny derivative protection to boyfriends or

fiancés of women subject to forced abortion or sterilization is also reasonable.

Yang v. U.S. Att'y Gen., 494 F.3d 1311, 1317 (11th Cir. 2007) (per curiam).

Lin contends that he qualifies as a persecuted spouse, under 8 U.S.C.

§ 1101(a)(42)(B) because his girlfriend, to whom he considered himself

unofficially married, was forced to undergo an abortion.  Lin concedes that he was

not legally married to his girlfriend and has presented only his testimony as proof

of her existence and of the forced abortion.  Although Lin argues that the BIA

unreasonably interpreted § 1101(a)(42)(B) to exclude non-legally married spouses

from protection under the family planning provisions, we have already rejected

Lin's argument, see Yang, 494 F.3d at 1317, and he has offered no authority to

undermine that holding.

Although he makes no clear argument and cites no related authority, Lin

does mention his attempted resistance to the family planning officials who came to

his house.  Liberally construing Lin's pro se brief, we now also review the BIA's

11

decision as to whether his being struck by family planning officials while attempting to prevent the abortion amounts to persecution in response to "other resistance" and thereby provides sufficient basis for a well-founded fear of future persecution. See 8 U.S.C. § 1101(a)(42)(B). According to Lin, his fear of returning to China, with respect to the family planning authorities, is not that they would beat him, but that they may fine him for having violated the policy. He has not asserted that any such fine would be particularly exorbitant. We have already indicated that a single fine for failure to comply with family planning policy does not amount to persecution. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1203 (11th Cir. 2005); see also In re J-W-S, 24 I.&N. Dec. 185, 194-95 (BIA 2007) (BIA finds a fine for illegal departure would not amount to persecution). Accordingly, we agree with the BIA that Lin's fear of a fine is insufficient to lend him refugee status.

Lin's status as the boyfriend of a woman forced to undergo an abortion and his fear of being fined by the family planning authorities are his only arguments related to a statutorily protected factor. Without a statutory factor as a basis for refugee status, Lin cannot establish asylum eligibility. 8 U.S.C. §§ 1101(a)(42(A), 1158(b)(1); 8 C.F.R. § 208.13(a), (b).

Finally, Lin also contends that the IJ's decision "fail[ed] to contain necessary finding of facts and application of governing law." Petitioner's Br. at

12

20. This contention is irrelevant. In this case, we review only the decision of the BIA because the BIA did not expressly adopt any portion of the IJ's opinion. If, in view of Lin's pro se status, we read the argument liberally, applying it to the BIA opinion, it is still without merit. The BIA made its decision "assuming that [Lin] testified credibly." AR at 2. Thus, citing appropriate law, it made only a legal determination that the facts to which Lin testified did not satisfy the requirements for refugee status. As we have explained, we find no error in that determination.

### III. CONCLUSION

Lin petitions for review of the BIA's dismissal of his appeal of the denial by the Immigration Judge ("IJ") of his applications for asylum, withholding of removal, and CAT relief. Because Lin failed to exhaust his administrative remedies as to withholding of removal or CAT relief, we lack jurisdiction and DISMISS his petition as to those issues. Because Lin was never legally married to the woman he alleges suffered a forced abortion under China's family planning program, he cannot qualify for derivative protection under the family planning provisions of INA § 101(a)(42)(B), 8 U.S.C. § 1101(a)(42)(B). He provides no other sufficient basis for refugee status. Accordingly, we DENY his petition as to asylum.

**DISMISSED IN PART, DENIED IN PART**