**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3005
_____

XIANG MING WANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A089-254-391
Immigration Judge: Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 28, 2010
Before:  SCIRICA, Chief Judge, SMITH and WEIS, Circuit Judges
Opinion filed: May 3, 2010
_____

OPINION
_____

PER CURIAM.

Petitioner Xiang Ming Wang, a native and citizen of China, entered the

United States in May, 2007 without being inspected.  On November 12, 2007, he filed an

application for asylum under Immigration & Nationality Act ("INA") § 208(a), 8 U.S.C. §

1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution on account of his opposition to China's population control policies. In his asylum application, Xiang Wang stated that his wife, Jian Yun Zheng, gave birth to their first child, a girl, in 1987. In 1994, his wife gave birth to their second child, a boy, at the Wen Wu Sha Town Health Clinic. Although the couple waited the required five years, they did not obtain formal permission to have a second child. About three months after the birth of their son, in December, 1994, Fujian Province Family Planning Officials went to Xiang Wang's mother's home, took his wife to Chang Le City Hospital, and forcibly sterilized her. A.R. 390.

On January 17, 2008, removal proceedings were initiated against Wang when the Department of Homeland Security filed a Notice to Appear with the Immigration Court, charging that he was subject to removal pursuant to INA § 212(a)(6)(A)(I), 8 U.S.C. §1182(a)(6)(A)(I), as an alien present in the United States without being admitted or paroled. Xiang Wang admitted the allegations in the NTA and conceded removability.

A hearing on the merits was held on June 9, 2008. At the hearing, Xiang Wang testified that he was married in 1986 and his marriage was officially registered on February 6, 1990. He has two children, a daughter born on December 23, 1987, and a son born on September 17, 1994. His wife and children presently remain in China. In

2

December, 1994, his wife was forcibly sterilized while he was at work in Fuzhou City. He did not get to the hospital until it was too late and she had already been sterilized. Xiang Wang did not want his wife to be sterilized. A.R. 89-90, 100-01.

Over a year later, on January 6, 1996, Wang learned that he had been fined 8,500 RMB, more than a year's salary, for the birth of his son. A.R. 91-92. Despite the fact that his children were born 7 years apart, 2 years more than the 5 years required by the family planning office for having a second child, he was fined because he failed to obtain a birth permit. See id. 90-91. Wang refused to pay, but his wife was frightened and gave what money they had – 1,500 RMB – to the officials who came to his house to collect the fine. The money was not enough and the officials tried to arrest Xiang Wang. He resisted arrest, and they pushed him down and punched and kicked him, and ultimately effected an arrest. See id. at 92-93. He was detained at the Lang Qi Town Family Planning Office. His wife was able to borrow an additional 7,000 RMB from neighbors and relatives and she brought the money to the officials. Xiang Wang was released that evening. See id. He sought treatment for his injuries from a private doctor. See id. at 105. Because of pain, he could not complete a homebuilding job he was working on (as a carpenter). See id. at 103-04, 106. On May 6, 2007, about 11 years later, Xiang Wang left China and flew to Mexico. From there, he crossed the border into the United States.

In support of his asylum application, Wang offered a statement from his

3

wife, which corroborated her involuntary sterilization, the fine, and Xiang Wang's beating. See id. at 139-40. Medical reports were submitted corroborating his wife's previous bilateral tubal ligation. The 2006 and 2007 State Department Country Reports on China were made a part of the Administrative Record.

The Immigration Judge issued a decision at the end of the merits hearing, denying all relief. The IJ found that Xiang Wang's wife's sterilization claim, which he deemed credible, was insufficient to establish asylum eligibility under Matter of J-S-, 24 I. & N. Dec. 520 (BIA 2008), which had overruled Matter of C-Y-Z-, 21 I. &. N. Dec. 915 (BIA 1997). Under current Board precedent, the spouse of a person who has undergone involuntary sterilization is not per se entitled to refugee status. Moreover, as to whether Xiang Wang had resisted the family planning officials, the harm he alleged to have suffered did not rise to the level of persecution. He was detained for only part of one day, and he suffered no serious injuries. In the alternative, the IJ doubted whether Xiang Wang had testified credibly because he could have but did not corroborate his physical injuries, his wife did not mention in her statement that he saw a doctor for his injuries, and he proffered no letter from his employer concerning his inability to work after he allegedly was beaten. Finally, the IJ concluded that there was no evidence that Xiang Wang would be persecuted in the future because his wife had already been sterilized and he had paid all of his fine. In addition, he was not entitled to withholding of removal because he could not even meet the test for asylum, and his CAT claim had no

4

evidentiary support. The IJ ordered Xiang Wang removed to China.

Xiang Wang appealed to the Board of Immigration Appeals, challenging the IJ's adverse credibility determination and assessment of the sufficiency of the evidence of his "other resistance" to China's population control policies. On June 12, 2009, the Board dismissed the appeal, agreeing with the IJ that Xiang Wang was not per se eligible for refugee status under Matter of J-S-, 24 I. & N. Dec. 520 (BIA 2008), and our decision in Lin-Zheng v. Att'y Gen. of U.S., 557 F.3d 147 (3d Cir. 2009) (en banc). He, therefore, could not show past persecution. Although a husband may not establish eligibility based on his wife's sterilization, he may still establish eligibility by showing that he was persecuted for "other resistance" to China's population control policies, or he has a well-founded fear of future persecution on account of such resistance, see id. at 157; INA § 101(a)(42)(B). However, even assuming that Xiang Wang's conduct in refusing to pay the 8,500 RNB fine, and resisting arrest (and the resulting injuries) constituted "other resistance," he did not meet his burden of proof, because he failed to provide reasonably obtainable corroboration from his treating physician and his employer. Furthermore, a single beating does not rise to the level of persecution, see Chen v. Ashcroft, 381 F.3d 221, 234-35 (3d Cir. 2004).

In addition, the objective reasonableness of Xiang Wang's fear of future persecution was seriously undermined by the fact that he remained in China for 11 years, unharmed, following his brief detention for failing to pay the complete fine. There now

5

were no outstanding fines, and Xiang Wang had failed to show that family planning officials remained interested in him, or those similarly situated to him. The Board agreed with the IJ that Xiang Wang was not entitled to withholding of removal because he could not even meet the test for asylum, and his CAT claim had no evidentiary support. Xiang Wang has timely petitioned for review of the Board's decision.

We will deny the petition for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Where the Board adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review both decisions. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). An applicant bears the burden of proving eligibility for asylum. Shardar v. Att'y Gen. of U.S., 503 F.3d 308, 312 (3d Cir. 2007). The Board's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, Xiang Wang must establish that the evidence does not just support a contrary conclusion but compels it. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993)). It refers only to "severe"

6

conduct and "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." Id. In the absence of evidence of past persecution, the applicant must demonstrate a subjective fear of persecution through credible testimony that his fear is genuine, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), and the applicant must show that a reasonable person in his circumstances would fear persecution if returned to the country in question, see id.

The more exacting withholding of removal standard requires an alien to show by a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component). In making out a CAT claim, the burden of proof is on the applicant to establish that it is more likely than not that he would be tortured in his native country. 8 C.F.R. § 1208.16(c)(2).

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which added the following language at the end of INA § 101(a)(42)'s definition of refugee:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political

7

opinion, and a person who has a well-founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well-founded fear of persecution on account of political opinion.

INA § 101(a)(42), 8 U.S.C. § 1101(a)(42) (2009).

The Board previously held that, under INA § 101(a)(42), a husband who established that his wife underwent a forced abortion or involuntary sterilization was per se entitled to refugee status, see Matter of C-Y-Z-, 21 I. & N. Dec. 915, and Matter of S-L-L-, 24 I. & N. Dec. 1 (BIA 2006). We extended Chevron deference, Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837, 842 (1984), to this interpretation by the Board in Sun Wen Chen v. Att'y Gen. of U.S., 491 F.3d 100, 107-108 (3d Cir. 2007). However, the Attorney General overruled Board precedent in Matter of J-S-, 24 I. & N. Dec. 520, concluding that a proper reading of INA § 101(a)(42) does not encompass a per se entitlement to asylum for the spouses of those who have undergone a forced abortion or involuntary sterilization, id. at 529-30. Rather, the statute extends relief only to those who have actually undergone the procedures. See id.

We independently reached the same conclusion in Lin-Zheng, 557 F.3d 147 (overruling Sun Wen Chen). The statute is unambiguous and does not extend automatic refugee status to spouses. Id. Therefore, eligibility for asylum based on the experiences of one's spouse is legally insufficient. Id. at 156 ("Thus, there is no room for us to conclude that Congress intended to extend refugee status to anyone other than *the*

8

*individual who* has either been forced to submit to an involuntary abortion or sterilization, has been persecuted for failure or refusal to undergo such a procedure, or has a well-founded fear of that occurring in the future."). The statute cannot be more clear in its reference to a person rather than a couple. See id.

Both Lin-Zheng and Matter of J-S- foreclose eligibility for asylum in Xiang Wang's case solely on the basis of his wife's involuntary sterilization. Thus, he can only establish a basis for asylum if he shows that he suffered past persecution or has a well-founded fear of persecution in China on account of his "other resistance" to the Chinese government's population control policies. Lin-Zheng, 557 F.3d at 157; Matter of J-S-, 24 I. & N. Dec. at 538. The phrase *other resistance* "covers a wide range of circumstances, including expressions of general opposition, attempts to interfere with enforcement of government policy in particular cases, and other overt forms of resistance to the requirements of the family planning law," see Matter of S-L-L-, 24 I. & N. Dec. at 10.

We conclude that Xiang Wang's evidence does not compel the conclusion that he exercised "other resistance" to China's population control policies sufficient to qualify him for refugee status. 8 U.S.C. § 1252(b)(4)(B). Even assuming that he testified credibly and that additional corroboration of his physical injuries and the loss of one carpentry job was not required, but see Chen v. Gonzales, 434 F.3d 212, 221 (3d Cir. 2005) ("a credible asylum applicant may be required to supply corroborating evidence in order to meet [his] burden of proof"), he did not meet his burden of proof to show that he

9

was persecuted. The beating he suffered when he resisted arrest does not rise to the level of persecution, see, e.g., Kibinda, 477 F.3d at 119-20 (five-day detention resulting in minor injury did not amount to persecution); Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (single beating that does not result in serious physical injury does not compel reversal of the Board's decision that alien did not suffer past persecution), and the record is devoid of any independent evidence to establish that the fine imposed or the loss of his job left him in "an impoverished existence," see Petitioner's Brief, at 10, that rose to the level of economic persecution, see Li v. U.S. Attorney Gen., 400 F.3d 157, 167-68 (3d Cir. 2005) (deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom may constitute persecution).

In his brief, Xiang Wang contends that he was "a victim of the change in the law" in that his case was prepared when Matter of C-Y-Z- was still good law. See Petitioner's Brief, at 7. We are not persuaded that this argument warrants granting the petition for review. Although the agency's interpretation of INA § 101(a)(42) changed with respect to spousal eligibility, and we overruled Sun Wen Chen, an alien's eligibility for asylum on the basis of "other resistance" has remained constant. The Board recognized at the time of Xiang Wang's merits hearing that an alien's eligibility for asylum under INA § 101(a)(42) included eligibility for persecution or feared persecution on account of the alien's other resistance to family planning policies. See, e.g., Matter of J-S-, 24 I & N Dec. at 527; Li, 400 F.3d at 163. This part of INA § 101(a)(42) has been

10

at all times relevant in Xiang Wang's case.[1] Even if he argued, and he does not, that his case should be remanded for consideration of the "other resistance" issue, he does not allege any facts, not previously submitted, that could support such a finding. Cf. 8 C.F.R. § 1003.2 ("A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material.")

Substantial evidence also supports the Board's determination that Xiang Wang failed to demonstrate a well-founded fear of future persecution. He remained in China for eleven years after his wife's involuntary sterilization without further incident. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) (when family members remain in petitioner's native country without meeting harm, and there is no individualized showing of persecution, the reasonableness of alien's well-founded fear of persecution is diminished).

Because Xiang Wang failed to show past persecution or a reasonable fear of future persecution under the lower burden of proof required for asylum, he is necessarily ineligible for withholding of removal. Cardoza-Fonseca, 480 U.S. at 430-32. In addition, the record does not compel a conclusion that he met his burden of establishing that it is more likely than not that he will be tortured upon his return to China, 8 C.F.R. §

_____

[1] The argument is especially weak because Matter of J-S- was decided on May 15, 2008, and thus prior to Xiang Wang's removal hearing.

11

1208.16(c)(2).

For the foregoing reasons, we will deny the petition for review.