**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4046
_____

GUO ZHONG ZHENG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A093-389-898
Immigration Judge: Susan G. Roy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 22, 2010

Before: McKEE, Chief Judge, HARDIMAN and COWEN, Circuit Judges

(Opinion filed :July 23, 2010)

_____

OPINION
_____

PER CURIAM

Guo Zhong Zheng ("Zheng") petitions for review of the Board of Immigration

Appeals' final order of removal.  For the reasons that follow, we will deny the petition for

review.

Zheng, a native and citizen of China, entered the United States in May of 2006 along the Mexican border. On July 11, 2007, he was served with a Notice to Appear, which charged that he was removable under Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. These are charges he later would concede. Zheng filed an application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution on account of his opposition to China's population control policies.

Neither Zheng nor his wife gave testimony before the Immigration Judge. Instead, the IJ considered a letter from Zheng's wife, his asylum statement, and the documentary evidence he submitted, and assumed that Zheng would testify credibly. In her letter, Zheng's wife stated that her first child was a girl. She was forced to undergo sterilization three months after her son and second child was born in approximately August of 2003. She stated that three local birth control officials came to her house and told her she would have to undergo sterilization because she already had two children. A.R. 237. She protested, and her husband "was angry about what these cadre did to me. He went forward and tried to protect me but the cadre beat him and pushed him to the ground." A.R. 237-38. They forced her into a car, took her to their facility, and forcibly sterilized

2

her.  See id.

In Zheng's personal statement in support of his asylum application, he asserted that when the local birth control officials came: "We tried to beg the officials but they forced my wife into the car.  I went forward and tried to protect my wife but the cadres pushed me to the ground.  They forcibly took my wife to the Jiangnan Township family planning service station," A.R. 419, and forcibly sterilized her.  By the time Zheng arrived at the facility, his wife was already in the operating room.  Zheng and his family continued to live in China until May of 2006 when he left illegally to come to the United States.  Zheng stated that, if he were returned to China, he would be subject to a fine and imprisonment for leaving illegally, and he is afraid his children will suffer a similar kind of persecution under China's population control policies.  A.R. 420.  In addition to the statements, Zheng submitted the 2007 State Department "Profile of Asylum Claims and Country Conditions" for China.

On April 22, 2009, the IJ determined that Zheng had not proven his claim for asylum or withholding of removal.  As a matter of law, Zheng could not establish a claim for asylum based on his status as the spouse of someone who had been involuntarily sterilized, because the statutory definition of refugee does not include such spouses, see Lin-Zheng v. Att'y Gen. of U.S., 557 F.3d 147 (3d Cir. 2009) (en banc).  See also Matter of J-S-, 24 I. & N. Dec. 520 (A.G. 2008).  In addition, Zheng did not offer a level of resistance that would support a claim for asylum.  Zheng's "affirmative steps to try to

3

stop the family planning officials from taking his wife to be sterilized would constitute 'other resistance' as the term has been defined in the [INA] and the case law, " A.R. 56, but it did not rise to the level of persecution, see Chen v. Ashcroft, 381 F.3d 221 (3d Cir. 2004); Voci v. Gonzales, 409 F.3d 607 (3d Cir. 2005). Zheng was not seriously injured and he was not detained, and he did not claim that he was harmed or mistreated when he went to the facility where his wife was taken against her will. As to Zheng's alleged well-founded fear of persecution, the IJ concluded that he produced no evidence that the Chinese government would have any interest in him now. Neither Zheng nor his wife have been subject to any further inquiries or mistreatment by Chinese officials. Significantly, Zheng remained in China for three years after his wife was sterilized against her will, and he did not claim that he or his wife had been subject to additional mistreatment. Moreover, Zheng's wife and children still remain in China without any evidence of further mistreatment. Finally, the IJ concluded that, based on the 2007 Asylum Report, there was no evidence that Zheng would be singled out or harmed on account of his illegal departure. Also, Zheng failed to meet his burden of proof for withholding of removal and CAT protection. The IJ ordered Zheng removed to China.

Zheng appealed to the Board of Immigration Appeals. On October 2, 2009, the Board affirmed without issuing a separate opinion. This timely petition for review followed. In his brief on appeal, Zheng contends that "[t]he very act of the forcible sterilization was to punish both Mr. Zheng and his wife based on their violation, not just

hers alone, of China's one-child policy.... Right to procreation is so fundamental to the very existence and survival of the race.... Sterilization on Mr. Zheng's wife was an extreme conduct to Mr. Zheng because his wife's forcible sterilization procedure permanently terminates his basic right to have children." Petitioner's Brief, at 7(citation omitted).[1]

We will deny the petition for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Because the Board affirmed without writing a separate opinion, we review the IJ's decision as if it were the decision of the Board. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003). An applicant bears the burden of proving eligibility for asylum. Shardar v. Att'y Gen. of U.S., 503 F.3d 308, 312 (3d Cir. 2007). See also Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001). The Board's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard, Zheng must establish that the evidence does not just support a contrary conclusion but compels it. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

To establish refugee status and, thus, eligibility for asylum, the applicant must credibly demonstrate past persecution or a well-founded fear of persecution on account of

---

[1] Zheng does not challenge in his brief the agency's denial of his application for protection under the CAT, and thus this issue is waived. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

one or more of the statutorily protected grounds.  8 C.F.R. §§ 1208.13(a), (b); Camara v. Att'y Gen. of U.S., 580 F.3d 196, 202 (3d Cir. 2009).  Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom."  Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993)).  It refers only to "severe" conduct and "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional."  Id.  In the absence of evidence of past persecution, the applicant must demonstrate a subjective fear of persecution through credible testimony that his fear is genuine, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003), and the applicant must show that a reasonable person in his circumstances would fear persecution if returned to the country in question, see id.

The record does not compel the conclusion that Zheng established either past persecution or a well-founded fear of persecution on account of China's population control policies.  See 8 U.S.C. § 1252(b)(4)(B).  Regarding past persecution, the sterilization Zheng's wife was forced to undergo does not establish that Zheng himself is eligible for asylum.  The Board previously held that, under INA § 101(a)(42), a husband who established that his wife underwent a forced abortion or involuntary sterilization was per se entitled to refugee status, see Matter of C-Y-Z-, 21 I. & N. Dec. 915 (BIA 1997),

6

and Matter of S-L-L-, 24 I. & N. Dec. 1 (BIA 2006).[2] The Attorney General overruled

Board precedent in Matter of J-S-, 24 I. & N. Dec. 520, concluding that a proper reading

of INA § 101(a)(42) does not encompass a per se entitlement to asylum for the spouses of

those who have undergone a forced abortion or involuntary sterilization, id. at 529-30.

Rather, the INA extends relief only to those who have actually undergone the procedures.

See id. We independently reached the same conclusion in Lin-Zheng, 557 F.3d 147

(overruling Sun Wen Chen). The statute is unambiguous and does not extend automatic

refugee status to spouses. Id. Therefore, eligibility for asylum based on the experiences

of one's spouse is legally insufficient. Id. at 156 ("[T]here is no room for us to conclude

that Congress intended to extend refugee status to anyone other than *the individual who*

has either been forced to submit to an involuntary abortion or sterilization, has been

persecuted for failure or refusal to undergo such a procedure, or has a well-founded fear

of that occurring in the future.").

Zheng thus can only establish a basis for asylum if he shows that he suffered past

persecution or has a well-founded fear of persecution in China on account of his "other

resistance" to the Chinese government's population control policies. Lin-Zheng, 557

F.3d at 157; Matter of J-S-, 24 I. & N. Dec. at 538. The phrase *other resistance* "covers a

wide range of circumstances, including expressions of general opposition, attempts to

---

[2] We extended Chevron deference, Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837, 842 (1984), to this interpretation by the Board in Sun Wen Chen v. Att'y Gen. of U.S., 491 F.3d 100, 107-108 (3d Cir. 2007).

7

interfere with enforcement of government policy in particular cases, and other overt forms of resistance to the requirements of the family planning law," see Matter of S-L-L-, 24 I. & N. Dec. 1, 10 (BIA 2006). Zheng's evidence does not compel the conclusion that he exercised legally sufficient "other resistance" to China's population control policies. 8 U.S.C. § 1252(b)(4)(B). Although his conduct may constitute "other resistance," a single beating does not rise to the level of persecution, see Chen, 381 F.3d at 234-35. The "beating" and "pushing" Zheng suffered was short in duration and did not result in serious injury. See Kibinda, 477 F.3d at 119-20 (five-day detention resulting in minor injury did not amount to persecution); Voci, 409 F.3d at 615 (single beating that does not result in serious physical injury does not compel reversal of the Board's decision that alien did not suffer past persecution).

In addition, substantial evidence supports the IJ's determination that Zheng failed to demonstrate a well-founded fear of future persecution on account of his opposition to China's population control policies. He offered no evidence that Chinese authorities were looking for him, and he remained in China for three years after his wife's involuntary sterilization without further incident, see Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) (when family members remain in petitioner's native country without meeting harm, and there is no individualized showing of persecution, the reasonableness of alien's well-founded fear of persecution is diminished). Substantial evidence also supports the IJ's determination that Zheng failed to demonstrate a well-founded fear of future persecution

on account of his having departed the country illegally. Zheng fears being fined, but, as the IJ found, his documentary evidence does not support this claim. The 2007 Asylum Report states:

> The Chinese government accepts the repatriation of citizens who have entered other countries or territories illegally. In the past several years, hundreds of Chinese illegal immigrants have been returned from the United States, and U.S. Embassy officials have been in contact with scores of them. In most cases, returnees are detained long enough once reaching China for relatives to arrange their travel home. Fines are rare. U.S. officials in China have not confirmed any cases of abuse of persons returned to China from the United States for illegal entry.

A.R. 126.

The withholding of removal standard is more exacting than the asylum standard and requires an alien to show by a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). See also Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987) ("would be threatened" standard has no subjective component). Because Zheng failed to show past persecution or a reasonable fear of future persecution under the lower burden of proof required for asylum, he is necessarily ineligible for withholding of removal. See id. at 430-32.

For the foregoing reasons, we will deny the petition for review.